WALTERS *v.* UNION NATIONAL BANK OF MARQUETTE.

1. ADVERSE POSSESSION—BOUNDARIES—EVIDENCE.
   In nonjury action of ejectment to determine ownership of three-
   foot strip of land along the boundary line of two city lots,
   finding of trial court that westerly edge of old concrete in
   driveway, which had been in place upwards of 20 years, established the boundary line *held*, supported by evidence under
   record showing that plaintiffs' immediate predecessor in chain
   of title had had undisturbed use and possession of the disputed strip to the west thereof for upwards of 25 years.

2. BOUNDARIES — EVIDENCE — HARMONIOUS OCCUPANCY — ACQUIES-
CENCE.

In an action of ejectment between owners of adjoining city lots, based upon an alleged mistake in the original survey, evidence is admissible that the boundary had been defined for more than 20 years by a concrete driveway and that there had been harmonious occupancy thereto and acquiescence by the parties concerned in such boundary.

3. SAME—ACQUIESCENCE AS AGREEMENT.

Long practical acquiescence in a boundary, between the parties concerned, may constitute such an agreement on it as to be conclusive, even if it had been erroneously located.

4. ADVERSE POSSESSION—ERROR IN SETTING BOUNDARIES.

One may gain title to property by adverse possession even though through an innocent mistake in setting out the boundaries.

5. BOUNDARIES—ACQUIESCENCE—NEW SURVEYS.

A boundary line, long treated and acquiesced in as the true line, ought not to be disturbed on new surveys, 15 years' recognition and acquiescence being ample for purpose of establishing the boundary.

Appeal from Marquette; Bell (Frank A.), J. Submitted April 10, 1946. (Docket No. 12, Calendar No. 43,156.) Decided June 3, 1946.

Ejectment by Rufus Walters and another against Union National Bank of Marquette, guardian of Louis Blair, incompetent, and others to determine the ownership of a strip of land. Judgment for plaintiffs. Defendants appeal. Affirmed.

*Michael J. Khoury*, for plaintiffs.

*John J. Walsh*, for defendants.

BOYLES, J. Plaintiffs brought this action in ejectment in the circuit court for Marquette county to try title to a strip of land three feet wide along the

boundary line between lots 5 and 6, block 7, John Burt's Addition to the city of Marquette. The case was tried before the circuit judge without a jury resulting in a finding by the court that the defendants were guilty of unlawfully withholding said strip of land from the plaintiffs. Judgment for plaintiffs was entered accordingly and defendants appeal. The location of lots 5 and 6 and of the disputed strip is shown on the following map:

N

W    Plaintiffs' Lot 6    Defendants' Lot 5    E

S

* 3-foot strip in dispute.

The only ground urged for reversal by appellants in their brief is that there was no evidence to support the court's finding and judgment that title to the

strip of land in question had been acquired by plaintiffs and their grantors by adverse possession. However, this was not the only ground on which plaintiffs based their claim of title, nor was it the only ground on which the court found that plaintiffs held title and right to possession. In their declaration plaintiffs claimed title both by adverse possession and as grantees in regular chain of title, and the circuit judge found that "the plaintiffs have title to the strip of land in question (1) by construction of their deeds, (2) by adverse possession, (3) by acquiescence, and (4) by the general policy of the law to refuse to disturb long-established boundaries, though not on the true line and not included in the description of the property in their deed of purchase."

The record title to these two lots is not in dispute. Plaintiffs are the owners of record of lot 6 and defendants John and Jane DeMerse are land-contract vendees of Louis Blair, owner of lot 5. Plaintiffs' lot 6 is the westerly one of the two lots—defendants' lot 5 adjoins lot 6 on the east. These lands were platted in 1860, since which time lots 5 and 6 have been conveyed by the numbers 5 and 6 shown on the recorded plat. The present dispute arises out of a difference of opinion between these parties as to the boundary line between these two lots.

Plaintiffs' immediate grantor, one Mrs. McKinnon, acquired her title to lot 6 in 1910 and held title continuously until 1936 at which time she conveyed her title to Elizabeth Rublein and Jeanette Beauchamp, reserving a life estate. In 1941 Mrs. McKinnon (thereby releasing her life estate) joined with Elizabeth Rublein and Jeanette Beauchamp in conveying lot 6 to plaintiffs. The principal question here is whether plaintiffs thus acquired title to the three-foot strip which is here in dispute.

As to defendants' lot 5, title was held by one Rotschild in 1907, conveyed to William C. Weber in 1914, by him conveyed to the Bendings in 1918, then conveyed by them to Schmidt and wife in 1925, conveyed by them to Margaret and Lulu Probst in 1928, then conveyed to Louis Blair in 1940. Blair gave the defendants DeMerse in 1940 the land contract under which they now hold possession of lot 5.

In 1940–1941, when the parties to this litigation acquired their respective interests in lots 5 and 6, there was a concrete driveway along the west side of defendants' house on lot 5. There was evidence that this driveway had been built more than 20 years. The west edge of this driveway was 11 feet 9 inches east of plaintiffs' house on lot 6, and this unpaved strip of land was used by the successive owners of lot 6 as a driveway. The line between lots 5 and 6 was never fenced or staked, and there was never any question raised between the successive owners of lots 5 and 6 as to the location of the lot line, until the present dispute arose. Plaintiffs claim title to the west edge of the old concrete driveway on lot 5.

In 1943 the defendants had a survey made by adopting the width of the lots as shown on the original plat, measured from the southeast corner of the block. This survey showed that the line between lots 5 and 6 was three feet west of the west edge of the old concrete driveway on lot 5. Defendants' surveyor did not examine the original plat, and started his survey by taking the southeast corner of lot 5, block 7, as a starting point, at a point where he found an old stake in the ground. The record is barren of any testimony as to whether this stake is a monument fixed by the original survey. Based on their survey the defendants covered the three-foot strip in question with new concrete. This new con-

crete effectively prevented plaintiffs from continuing to use the space between it and their house as a driveway.

Plaintiffs also had a survey made. It showed that a survey running from the west beginning at a recognized starting point placed a different boundary line between lots 5 and 6 than one starting at the same point and approaching these lots from the east, both using the courses and distances as shown on the plat. Furthermore, neither one of the two boundary lines thus indicated agreed with the line established by the defendants as being 129 feet west of the southeast corner of said block 7. Also, none of these three so-called surveys agreed with the established west line of lot 6. The circuit judge commented:

"This is not an unusual situation as regards lots and lot lines in old plats."

The court received considerable testimony from former owners and others, to aid in determining as to which of these litigants had the correct idea as to the boundary line between their lots. There was evidence to support defendants' theory, consisting of an old fence on the south side of lot 4, the remains of an old post at the southwest corner of lot 4, which is the southeast corner of lot 5, and some trees set along the south line of lot 7. Mrs. McKinnon, who had owned lot 6 from 1910 to 1936, and occupied it (partly under life lease) for about 33 years previous to 1941, corroborated by her daughter Mrs. Rublein, testified as to the location of the boundary line. They testified that lot 6 extended to the west line of the old concrete, that they occupied it, mowed the grass in the summer, shoveled snow on it in the winter, the owners of lot 5 never claimed it or paid any attention to it; that at the rear was an old barn,

that when it was removed they placed stones on the lot line, lined up with the west edge of the old concrete, which are still there. This boundary (claimed by plaintiffs) lines up with an old cedar fence post in the southeast corner of lot 4, block 12, across the street, directly south of lot 6 here involved.

The court had before it for decision the question of fact as to whether plaintiffs' deed of lot 6 conveyed title to the west line of the old cement, which would include the three-foot strip in dispute. The court concluded that plaintiffs had title to this three-foot strip. We cannot find from the record before us that the evidence clearly preponderates in the opposite direction. The court properly held that the west edge of the old concrete driveway established the line.

Mrs. McKinnon, plaintiffs' predecessor in chain of title, had undisturbed use and possession of this three-foot strip for upwards of 25 years. This distinguishes the case at bar from *Stewart* v. *Hunt*, 303 Mich. 161. The boundary claimed by plaintiffs had been defined and established for more than 25 years, accompanied by harmonious occupancy. The parties concerned had acquiesced in the boundary thus established.

"In defense to an action of ejectment based upon an alleged mistake in the original survey, evidence is admissible that the existing boundaries had been defined for more than 20 years by buildings, fences, and harmonious occupancy.

"Long practical acquiescence in a boundary, between the parties concerned, may constitute such an agreement on it as to be conclusive, even if it had been erroneously located." *Diehl* v. *Zanger* (syllabi), 39 Mich. 601.

"One may gain title to property by adverse possession even though through an innocent mistake in setting out the boundaries.

"A boundary line, long treated and acquiesced in as the true line, ought not to be disturbed on new surveys, 15 years' recognition and acquiescence being ample for purpose of establishing the boundary.

"In action of ejectment between owners of two adjacent city lots, evidence that defendants' grantor planted hedge within one foot of what both he and plaintiffs' then predecessor in title believed to be the boundary line and such line was acquiesced in for more than 15 years *held*, sufficient to establish title in defendants to seven-foot strip of land in dispute notwithstanding deed to defendants was given less than 15 years prior to commencement of action and did not include such land in description." *Gregory* v. *Thorrez* (syllabi), 277 Mich. 197.

Judgment affirmed. Costs to appellees.

Butzel, C. J., and Carr, Sharpe, Reid, North, and Starr, JJ., concurred. Bushnell, J., took no part in the decision of this case.