RUSH v STERNER

Docket No. 71870. Submitted February 8, 1984, at Grand Rapids.—
Decided June 19, 1985. Leave to appeal applied for.

Robert A. and Kathleen L. Rush brought an action in Ionia
Circuit Court seeking an order preventing Edward F. Sterner
and others from rehabilitating an unused dam across Prairie
Creek. Rehabilitation of the dam would flood a portion of
plaintiffs' property. Plaintiffs argued that any right on the part
of the defendants to flood plaintiffs' property was extinguished
by operation of the provisions of the marketable record title
act, that impoundment of waters behind the rehabilitated dam
would violate the provisions of the Michigan Environmental
Protection Act, and that the defendants' reconstruction efforts
on the dam were in violation of the licensing provisions of the
Inland Lakes and Streams Act. After plaintiffs had presented
their proofs, defendants moved to dismiss. The trial court,
Charles W. Simon, Jr., J., granted dismissal of plaintiffs' action,
holding that the marketable record title act was not applicable
to these circumstances, that plaintiffs lacked standing to main-
tain a claim under the Michigan Environmental Protection Act
and that plaintiffs lacked standing to bring a claim relative to
any failure by defendants to comply with the licensing require-

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] Am Jur 2d, Vendor and Purchaser § 115 *et seq.*
Construction and effect of "marketable record title" statutes. 31
ALR4th 11.

[2] Am Jur 2d, Appeal and Error § 937 *et seq.*
Application of "clearly erroneous" test of Rule 52(a) of Federal
Rules of Civil Procedure to trial court's findings of fact based on
documentary evidence. 11 ALR Fed 212.

[3] Am Jur 2d, Pollution Control § 9 *et seq.*

[4] Am Jur 2d, Pollution Control § 46 *et seq.*

[5] Am Jur 2d, Pollution Control § 23 *et seq.*
General principles governing standing to maintain action challeng-
ing omission or adequacy of environmental impact statement
required by § 102(2)(C) of National Environmental Policy Act of
1969 (42 USCS § 4332(2)(C)). 61 ALR Fed 87.

[6] Am Jur 2d, Waters § 43 *et seq.*

ments of the Inland Lake and Streams Act. Plaintiffs appealed.
*Held:*

1. The marketable record title act will extinguish any easement right created by a recorded instrument where the property has been held for the statutory period and there has been neither hostile possession nor some physical facility on the land against which the easement right runs which evidences the existence of the easement right. That act is applicable here even though the language of the deed did not specifically use the word easement, since the flowage right created in the original deed for plaintiffs' property is, in fact, in the nature of an easement right. Since the trial court erroneously held that the marketable record title act did not extinguish the easement right in these circumstances because plaintiffs were aware of the unused dam, the trial court failed to address defendants' claim that the act did not apply because they had a prescriptive easement to flow water over plaintiffs' property. Since a prescriptive easement would be hostile possession which would exclude operation of the marketable record title act, the trial court must address that question.

2. While the trial court was in error in stating that plaintiffs lacked standing to bring the environmental protection claim, it is clear that the basis for the trial court's holding on this issue was the court's conclusion that plaintiffs failed to make a prima facie case under the Michigan Environmental Protection Act. In that conclusion the trial court was correct, since plaintiffs failed to show any environmental damage sufficient to justify judicial intervention.

3. The trial court properly held that the plaintiffs lacked standing to raise the question of compliance with licensing provisions of the Inland Lakes and Streams Act, enforcement of that act being vested in the Department of Natural Resources.

Affirmed in part, reversed in part and remanded.

1. EASEMENTS — MARKETABLE RECORD TITLE ACT — RIGHT OF FLOW-
    AGE.

The marketable record title act will extinguish an easement right created by deed where a person has an unbroken chain of title for the statutory period and there has been neither hostile possession of the easement nor some physical facility evidencing the easement interest; the marketable record title act applies where a right of flowage is an "excepted and reserved" interest under the deed, even though there is no specific mention that the right of flowage is an easement right, since the easement provision of that act specifically speaks in terms of any easement or interest in the nature of an easement which

has been granted, excepted or reserved (MCL 565.101, 565.104; MSA 26.1271, 26.1274).

2. Environment — Environmental Protection Act — Appeal — Clear Error.

The Court of Appeals reviews *de novo* actions brought under the Michigan Environmental Protection Act; the trial court's findings of fact will not be overturned or modified unless they are clearly erroneous or unless the reviewing court is convinced it would have reached a different result had it sat as the trier of fact (GCR 1963, 517.1).

3. Environment — Actions — Environmental Protection Act.

Declaratory and equitable relief is available to the plaintiff in an action under the Michigan Environmental Protection Act only upon the plaintiff's making a prima facie showing that a natural resource is involved and that the impact of the activity at issue on the environment rises to a level of impairment which will justify injunctive relief (MCL 691.1203[1]; MSA 14.528[203][1]).

4. Environment — Judicial Intervention — Environmental Protection Act.

A court, in determining whether the impact of a proposed action on wildlife is so significant as to constitute an environmental risk which justifies judicial intervention pursuant to the Michigan Environmental Protection Act, should evaluate the environmental situations prior to the proposed action and compare it with the probable condition of the environment if the proposed action is undertaken; the court should consider: (1) whether the natural resource is rare, unique, endangered or of historical significance, (2) whether the resource is readily replaceable, (3) whether the proposed action will have any significant consequential effect on other natural resources, and (4) whether the direct or consequential impact on plants or animals will affect a critical number, considering the nature and location of the wildlife affected (MCL 691.1201 *et seq.;* MSA 14.528[201] *et seq.*).

5. Environment — Esthetics — Environmental Protection Act.

Esthetic considerations alone are not determinative of whether there is a significant environmental impact such as will justify judicial intervention pursuant to the provisions of the Michigan Environmental Protection Act (MCL 691.1201 *et seq.;* MSA 14.528[201] *et seq.*).

6. Licenses — Inland Lakes and Streams Act.

A private individual lacks standing to challenge in a direct action

in circuit court the failure of another individual to comply with the licensing requirements of the Inland Lakes and Streams Act, since the power to enforce the provisions of that act lies with the Department of Natural Resources (MCL 281.951 *et seq.;* MSA 11.475[1] *et seq.).*

*Varnum, Riddering, Schmidt & Howlett* (by *Nyal D. Deems* and *Teresa S. Decker),* for plaintiffs.

*Honigman, Miller, Schwartz & Cohn* (by *Stephen Wasinger),* and *Welch, Nichols, Watt & McKaig* (by *Lawrence P. McKaig),* for defendants.

Amicus Curiae:

*Dilley & Dilley* (by *Frederick D. Dilley),* for West Michigan Environmental Action Council.

Before: M. J. KELLY, P.J., and R. M. MAHER and M. P. REILLY,* JJ.

PER CURIAM. Plaintiffs appeal as of right from the trial court's order granting defendant's motions to dismiss pursuant to GCR 1963, 504.2.

At issue in this case is defendants' right to rehabilitate an unused dam on their property to produce hydroelectric power. Rehabilitation of the dam will flood part of plaintiffs' property, located immediately upstream from defendants' land, and may alter Prairie Creek which flows beside the property of both plaintiffs and defendants. Plaintiffs sought to prevent rehabilitation of the "Sterner dam" by arguing that any right defendants had to "flow" or "flood" plaintiffs' property had been extinguished by the marketable record title act, MCL 565.101 *et seq.;* MSA 26.1271 *et seq.,* that the Michigan Environmental Protection Act (MEPA), MCL 691.1201 *et seq.;* MSA 14.528(201) *et*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

*seq.,* would be violated if defendants were permitted to impound waters behind the dam at the desired level, and that defendants had done construction work on the dam in violation of the Inland Lakes & Streams Act of 1972, MCL 281.951 *et seq.;* MSA 11.475(1) *et seq.* After a bench trial, the court ruled against plaintiffs on each argument.

On appeal, plaintiffs first argue that the trial court improperly interpreted the marketable record title act. Plaintiffs claim that this act extinguished defendants' right to flowage over plaintiffs' property which had been expressly "excepted and reserved" to defendants' predecessors in interest in an 1854 deed. The trial court held that the act did not extinguish this right because plaintiff Robert Rush had known that there was an unused (and somewhat decrepit) dam on defendants' property at the time he bought his land. The court reasoned that this fact, coupled with the 1854 deed (which had created the "Rush" property) in plaintiffs' chain of title, constituted an exception to the marketable record title act under § 4 of the act.

The marketable record title act provides, in pertinent part:

"Sec. 1. Any person, having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for 40 years, shall at the end of such period be deemed to have a marketable record title to such interest, subject only to such claims thereto and defects of title as are not extinguished or barred by application of the provisions of succeeding sections of this act and subject also to such interests and defects as are inherent in the provisions and limitations contained in the muniments of which such chain of record title is formed and which have been recorded during said 40 year period: Provided, however, That no one shall be deemed to have such a marketable record

title by reason of the terms of this act, if the land in which such interest exists is in the hostile possession of another.

\*   \*   \*

"Sec. 4. This act shall not be applied \* \* \* to bar or extinguish any easement or interest in the nature of an easement, or any rights appurtenant thereto granted, excepted or reserved by a recorded instrument creating such easement or interest, including any rights for future use, if the existence of such easement or interest is evidenced by the location beneath, upon or above any part of the land described in such instrument of any pipe, valve, road, wire, cable, conduit, duct, sewer, track, pole, tower, or other physical facility and whether or not the existence of such facility is observable, by reason of failure to file the notice herein required. \* \* \*."

The plain language of this section states that the act will not bar an otherwise barred easement or interest in the nature of an easement only where a physical facility evidences the existence of the interest by its location beneath, upon or above any part of the land described in the instrument creating the interest. In this case, the instrument which created the right of flowage described plaintiffs' land, not defendants' land. The existence of the dam on defendants' property is, therefore, irrelevant for purposes of this exception. We find that the trial court erred in its application of the law to the facts of this case.

Defendants argue, however, that, even if this exception does not apply, the marketable record title act still should not bar their interest because it was an "excepted and reserved" interest rather than an easement. We disagree. The marketable record title act refers broadly to "any interest in land" and, in § 4, expressly refers to "any easement or interest in the nature of an easement \* \* \* granted, excepted or reserved". We believe

that the act applies even to reserved or excepted interests. We also reject defendant's contention that the act does not apply because the Rushes knew a dam existed.

Defendants also contend that the marketable record title act should not apply in this case because defendants had obtained a prescriptive easement to flow water over plaintiffs' property. The act expressly exempts such "hostile possession" from its application. In this case, however, the trial court declined to address this issue. We, therefore, reverse the trial court's determination that § 4 of the act provided an applicable exception to the act and remand to the trial court to permit the parties to present proofs and/or arguments on the prescriptive easement issue.

Plaintiffs next argue that the trial court improperly found that they had no claim under the Michigan Environmental Protection Act. Plaintiffs contend that the court improperly ruled that they lacked "standing" to bring this claim. After reviewing the court's ruling and its statements at the time it ruled, we find that the court actually held that plaintiffs had not made a prima facie showing that defendants' conduct had, or was likely to, pollute, impair or destroy natural resources or the public trust therein. The court simply misused the term "standing".

We also find that the trial court correctly found that plaintiffs had not presented a prima facie case under MEPA. In reviewing an action under MEPA, this Court reviews the record *de novo,* although the trial court's findings of fact will not be overturned or modified unless they are clearly erroneous or unless the reviewing court is convinced it would have reached a different result had it occupied the bench at trial. *Portage v Kalamazoo County Road Comm,* 136 Mich App 276, 279;

355 NW2d 913 (1984). The trial court must conduct a dual inquiry to determine if a prima facie showing of pollution, impairment, or destruction of a natural resource has been made: (1) whether a natural resource is involved, and (2) whether the impact of the activity on the environment rises to the level of impairment to justify the trial court's intervention. *Portage, supra; Kimberly Hills Neighborhood Ass'n v Dion,* 114 Mich App 495, 503; 320 NW2d 668 (1982), *lv den* 417 Mich 1045 (1983). In answering the latter question, the trial court should evaluate the environmental situation before the proposed action and compare it with the probable condition of the environment after. *Portage, supra.* Among the factors to be considered are: (1) whether the natural resource involved is rare, unique, endangered, or has historical significance, (2) whether the resource is easily replaceable (for example, by replanting trees or restocking fish), (3) whether the proposed action will have any significant consequential effect on other natural resources (for example, whether wildlife will be lost if its habitat is impaired or destroyed), and (4) whether the direct or consequential impact on animals or vegetation will affect a critical number, considering the nature and location of the wildlife affected. Finally, esthetic considerations by themselves do not constitute significant environmental impact. *Portage, supra.*

In this case, expert testimony was introduced by plaintiffs which established that Prairie Creek is a "marginal" or "mediocre" trout stream which is periodically treated by the Department of Natural Resources (DNR) to kill fish of all species in the stream and then restocked with trout. The creek is one of 20 to 25 trout streams in Southern Michigan managed in this way by the DNR. Prairie Creek is only one of two managed trout streams in

Ionia County, although most of the small tributaries to the Grand River contain some trout. Other streams in the area are not managed for trout because of temperature or other deficiencies. The expert testifying concluded that trout are "unique" in this particular area of Ionia County although common throughout Michigan.

Impoundment of Prairie Creek is likely to impair the creek in terms of its use as a trout stream. The speed of the creek will be diminished, the temperature will rise, and sedimentation will occur. The result of these effects will be a shift to other, warmer water fish species and away from trout. This competitive shift could be felt along the 20-mile stretch of the creek now managed by the DNR. In addition to this effect on the stream, trees and other vegetation will also be affected and the current flood plain area will become more of a permanent swamp.

We agree with the trial court that impoundment of the stream in this case will not impair the environment to a level which justifies judicial intervention. Although trout are "unique" in the particular area of Ionia County involved here, they are common throughout Michigan and exist in other streams within the general geographical area of Ionia County.[1] In addition, the trout exist in this stream because of stringent management efforts by the DNR; without such efforts, the trout would not compete as successfully against other species of fish as they do with the efforts. Finally, there was no evidence that the trees or other

---

[1] In *Portage v Kalamazoo County Road Comm, supra,* this panel stated that we do not agree with the panel in *Kimberly Hills Neighborhood Ass'n v Dion, supra,* that a "statewide" as opposed to a "local" perspective is always necessary when addressing the alleged impairment or destruction of animal or plant life. 136 Mich App 283, fn 2. We reaffirm our position in that case. However, under either perspective, we find that the level of impairment involved in this case does not justify judicial intervention.

vegetation are in any way unique or are not easily replaced or that the loss of these plants would adversely affect other flora or fauna.

Plaintiffs next argue that the trial court incorrectly ruled that they did not have standing to challenge defendants' failure to comply with the licensing requirements of the Inland Lakes & Streams Act of 1972. We disagree. The act, MCL 281.951 *et seq.;* MSA 11.475(1) *et seq.,* does not provide a mechanism by which a private person may enforce violations of the act. Instead, the act provides that the Department of Natural Resources may sue in circuit court to enforce compliance with the act. MCL 281.963(1); MSA 11.475(13)(1), and provides that a person aggrieved by any action or inaction of the department may request a formal hearing on the matter involved, MCL 281.961(2); MSA 11.475(11)(2). A determination, action or inaction by the Natural Resources Commission following the hearing is subject to judicial review, MCL 281.961(3); MSA 11.475(11)(3). The trial court thus correctly held that it was without jurisdiction to hear plaintiffs' claim until the commission had acted or failed to act in this matter.[2]

Plaintiffs' final argument is that the trial court erred by refusing to define the extent of defendants' flowage rights once the court had ruled that the marketable record title act did not extinguish defendants' right to flow water over plaintiffs' land. This issue is now moot in light of our disposition of the first issue. However, if the trial court ultimately determines that defendants have established a prescriptive easement over plaintiffs' property, the court should determine the extent of the easement at that time.

---

[2] We reject plaintiffs' argument that "standing" is an issue which must be raised by the party challenging standing under GCR 1963, 116.1(3). That rule applies to a party's "legal capacity to sue".

Reversed in part; affirmed in part; remanded for proceedings not inconsistent with this opinion.