KENT COUNTY ROAD COMMISSION v HUNTING

MICHIGAN ENVIRONMENTAL PROTECTION FOUNDATION v
KENT COUNTY ROAD COMMISSION

Docket Nos. 100693, 100694. Submitted February 11, 1988, at Grand
Rapids. Decided July 19, 1988. Leave to appeal applied for.

The Kent County Road Commission decided to increase the
twenty-one foot width of Crahen Avenue in Grand Rapids
Township and initiated in the Kent Circuit Court proceedings
pursuant to the Uniform Condemnation Procedures Act against
Allen L. Hunting and several other landowners whose proper-
ties would be affected by the project. The landowners filed a
motion challenging the necessity for the acquisition of their
properties under the proposed project. In a separate action filed
against the road commission in the Kent Circuit Court, the
Michigan Environmental Protection Foundation (MEPF) and
some of the landowners alleged violations of the Michigan
Environmental Protection Act and sought injunctive relief to
halt the project. The actions were consolidated in a bench trial
before Robert A. Benson, J., who denied the landowners' mo-
tion to review necessity and dismissed the complaint filed by
MEPF and some of the landowners. The landowners in the
condemnation action appealed by leave granted and the plain-
tiffs in the other action appealed as of right.

The Court of Appeals consolidated the appeals and *held:*

1. The trial court properly determined that the public had
acquired title to Crahen Avenue under the "highway by user"
statute and that the landowners failed to rebut the presump-
tion that the public can rightfully claim property to widen
Crahen Avenue to as much as sixty-six feet. The trial court,
therefore, correctly ruled that the road commission need only

REFERENCES

Am Jur 2d, Appeal and Error §§ 736 *et seq.,* 839, 841.
Am Jur 2d, Eminent Domain §§ 375 *et seq.,* 385 *et seq.*
Am Jur 2d, Evidence § 506.
Am Jur 2d, Highways, Streets and Bridges §§ 25-31, 51 *et seq.,* 61.
See Index to Annotations under Appeal and Error; Eminent Do-
main; Environmental Law; Evidence; Highways, Streets and
Bridges.

condemn property falling outside of this sixty-six-foot-wide right of way.

2. The trial court was bound by the road commission's determination of necessity in the absence of a showing of fraud, error of law, or abuse of discretion.

3. The trial court did not err in ruling that MEPF and the landowners had failed to make a prima facie case that the proposed removal of several hundred-year-old trees under the proposed project justifies the issuance of an injunction under the Michigan Environmental Protection Act.

4. The trial court did not abuse its discretion in refusing to admit hearsay evidence regarding the planting of the affected trees, which evidence was offered by the landowners to show that action had been taken to rebut the presumption that the public has a sixty-six-foot-wide right of way with regard to Crahen Avenue. The statements did not meet the requirement that the matter be of general interest to all members of the community before hearsay evidence of reputation concerning boundaries can be admitted.

Affirmed.

1. EMINENT DOMAIN — UNIFORM CONDEMNATION PROCEDURES ACT — NECESSITY — APPEAL.

A circuit court, when ruling on a motion to review the necessity of a governmental agency's acquisition of property pursuant to the Uniform Condemnation Procedures Act, is bound by the agency's determination of necessity in the absence of a showing of fraud, error of law, or abuse of discretion (MCL 213.56[2]; MSA 8.265[6][2]).

2. HIGHWAYS — HIGHWAY BY USER — EVIDENCE.

The public may acquire title to a highway by prescription where no formal dedication has ever been made; the acquisition of such a "highway by user" requires evidence of a definite line of travel with definite boundaries, used and worked upon by public authorities, and traveled upon by the public for ten, or in some situations eight, consecutive years without interruption, in an open, notorious, and exclusive manner (MCL 221.20; MSA 9.21).

3. HIGHWAYS — HIGHWAY BY USER — WIDTH OF HIGHWAYS.

A rebuttable presumption that a road established pursuant to the "highway by user" statute is four rods, or sixty-six feet, wide arises where the elements of "highway by user" are established; to rebut the presumption, a landowner's control of the disputed area within the width provided by the statute must

have been open, notorious, and adverse during the time that the statutory ten-year period of continued and uninterrupted use of the highway was running (MCL 221.20; MSA 9.21).

4. ENVIRONMENT — ENVIRONMENTAL PROTECTION ACT — APPEAL — CLEAR ERROR.

The Court of Appeals reviews de novo actions brought under the Michigan Environmental Protection Act; the trial court's findings of fact will not be overturned or modified unless they are clearly erroneous or the reviewing court is convinced it would have reached a different result had it sat as the trier of fact.

5. APPEAL — FINDINGS OF FACT — CLEAR ERROR.

A trial court's finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made.

6. ENVIRONMENT — ACTIONS — ENVIRONMENTAL PROTECTION ACT.

Declaratory and equitable relief is available to the plaintiff in an action under the Michigan Environmental Protection Act only upon the plaintiff's making a prima facie showing that a natural resource is involved and that the impact of the activity at issue on the environment rises to a level of impairment which will justify injunctive relief (MCL 691.1201 *et seq.*; MSA 14.528[201] *et seq.*).

7. ENVIRONMENT — JUDICIAL INTERVENTION — ENVIRONMENTAL PROTECTION ACT.

A court, in determining whether the effect on the environment of a proposed activity challenged under the Michigan Environmental Protection Act rises to the level of impairment so as to justify the court's intervention, should evaluate the environmental situation prior to the proposed action and compare it with the probable condition of the environment if the proposed action is undertaken; the court should consider (1) whether the natural resource is rare, unique, endangered or of historical significance, (2) whether the resource is readily replaceable, (3) whether the proposed action will have any significant consequential effect on other natural resources, and (4) whether the direct or consequential impact on plants or animals will affect a critical number, considering the nature and location of the wildlife affected (MCL 691.1201 *et seq.*; MSA 14.528[201] *et seq.*).

8. EVIDENCE — APPEAL.

The admissibility of evidence is a question submitted to the trial court's discretion and its decision will not be overturned absent an abuse of discretion.

9. EVIDENCE — HEARSAY — REPUTATION CONCERNING BOUNDARIES.
Reputation in a community, arising before a controversy, as to
boundaries of or customs affecting lands in the community is
not excluded by the hearsay rule, even though the declarant is
available as a witness; the facts for which such an opinion or
reputation can be taken as trustworthy must be such facts as
have been of interest to all members of the community as such,
and therefore have been so likely to receive general and intelli-
gent discussion and examination by competent persons, so that
the community's received opinion on the subject cannot be
supposed to have reached the condition of definite decision
until the matter had gone, in public belief, beyond the state of
controversy and had become settled with fair finality (MRE
803[20]).

*Varnum, Riddering, Schmidt & Howlett* (by *Peter A. Smit* and *Matthew D. Zimmerman*), for Kent County Road Commission.

*Peter W. Steketee*, for Allen L. Hunting, Michigan Environmental Protection Foundation et al.

Before: CYNAR, P.J., and WEAVER and R. M. PAJTAS,* JJ.

CYNAR, P.J. This is a consolidated action. Docket No. 100693 is a condemnation action brought by the Kent County Road Commission. Defendants appeal by leave granted from the May 11, 1987, order which denied their motion to review necessity. Docket No. 100694 is an action brought by the Michigan Environmental Protection Foundation (MEPF), along with several other persons, who sought to enjoin the proposed road commission project. In the latter case, plaintiffs appeal as of right from a denial of their motion for a preliminary injunction pendente lite and the dismissal of their case with prejudice.

In June, 1986, the road commission commenced

* Circuit judge, sitting on the Court of Appeals by assignment.

condemnation proceedings pursuant to Michigan's Uniform Condemnation Procedures Act, MCL 213.51 *et seq.*; MSA 8.265(1) *et seq.*, against several landowners who own property along a 1½-mile stretch of Crahen Avenue, which runs between M-21 and Leonard Street in Grand Rapids Township. The road commission decided that it would be necessary to improve Crahen Avenue and sought right-of-way easements, muck removal permits, grading and drainage rights. The commission also wanted to acquire fee title to two small parcels of property owned by the Grand Rapids Golf Club.

On July 1, 1986, defendant landowners filed a motion to review necessity, claiming there was no need for the project because the proposed widening would destroy at least ninety roadside trees. According to defendants, many of these trees were over one hundred years old and of historical significance since they were allegedly planted for the American centennial. In addition, defendants claimed that the project was not justified by traffic or safety considerations and there were other more feasible alternatives to the project.

On July 24, 1986, the MEPF, along with some of the condemnation defendants from the original suit, filed a three-count complaint against the road commission alleging inter alia violations of the Michigan Environmental Protection Act (MEPA), MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.* Plaintiffs sought a temporary restraining order to halt the project, a permanent injunction and a declaratory judgment that Crahen Avenue is a "common law" road.

Both cases were consolidated and testimony was taken from several witnesses during the course of a five-day bench trial held in December, 1986. David Groenleer, a road commission civil engineer, testified that Crahen Avenue is a 1½ mile long

two-lane road running north and south between M-21 and Leonard Street. It is designated as a county primary road. The road surface is in poor condition. The pavement width is between twenty and twenty-one feet. The shoulder width is anywhere between two or three feet to no shoulder at all in some spots. The speed limit is forty-five miles per hour. The traffic count records show 1,200 to 1,400 vehicles travel on the road each day.

The county first considered widening the road in 1979 because of an increase in traffic and because the road surface was breaking up. Simply resurfacing the road was not a viable option due to the bad clay subsoil which causes the pavement to break up. In 1985, the original plan was revised in order to save trees and reduce the impact on adjoining lands. Lane width was reduced from twelve to eleven feet and the shoulder width was reduced from eight to five feet. The revised plan called for the cutting down of about ninety trees. This figure has now been reduced to seventy-nine trees. Once the project is underway, however, adjustments in the slope of the drainage ditch may save an additional twenty trees (requiring approximately fifty-nine to sixty to be cut). The county agreed to replace any trees that would be removed due to construction. The current plan is to reconstruct the road to have a surface width of twenty-two feet and five-foot shoulders on each side. Groenleer also stated that a ditch drainage system would be better than a buried drain system as proposed by the parties opposing the project.

Robert L. Morris, a traffic planning expert, testified for the landowners. He stated that it was not necessary to cut down the trees. Sufficient improvements could be made by having a twenty-two foot paved roadway, with two-foot shoulders and buried drainage pipes. The additional costs for

burying the pipes would be about $80,000. According to Morris, his design plan calling for narrow shoulders would be safer than the commission's plan since drivers would perceive the road as a slower speed zone.

On cross-examination, Morris admitted to spending one to one and one-half hours walking up and down Crahen Avenue. He took no notes, no photographs, no measurements, no traffic counts, performed no speed or slope analysis, and had no knowledge of the current drainage system, average daily traffic count, maintenance history or future development plans. Nevertheless, he still opined that the commission project was a good one.

Richard Miller, a litigant in this case and a resident of Crahen Avenue, attempted to testify about what he heard in a conversation he had with two gentlemen twenty years earlier regarding how the large trees came to exist along Crahen Avenue. The commission objected on hearsay grounds. The trial court permitted the testimony. The testimony revealed that the trees had been planted for America's centennial. After the court heard the testimony, it was subsequently excluded as not falling within the hearsay exception of MRE 803(20) (reputation concerning boundaries or general history). Miller claimed that removal of the three old trees from his front yard would reduce the value and enjoyment of his property.

Eric Bourdo, the former Dean of the School of Forestry and Wood Products at Michigan Technological University, testified for the landowners as well. He opined that the trees were about one hundred years old and probably had been planted. He said that the Davey Tree Company study prepared for the commission was superficial since it concluded that the trees would live for about ten to twenty years. Bourdo said that no one knows

how long the trees would live. He agreed that these trees are not unique. There are thousands of similar trees across Michigan and the country. He also agreed that "a lot" of the trees are sick and would die within ten to one hundred years.

Following the trial, the court issued its opinion in both cases from the bench. He concluded that the county had established necessity for the project, the parties opposed to the project had failed to make out a prima facie case under MEPA and dismissed their complaint and, since the roadway is sixty-six feet wide, the only portion the county has to condemn is the portion falling outside of the sixty-six foot right of way. On May 11, 1987, orders were entered in both cases from which the parties now appeal.

Initially, defendant landowners claim that the trial court erred in finding that they failed to introduce sufficient evidence to rebut the highway by user statute's[1] presumption that the Crahen Avenue right of way is sixty-six feet wide. Before addressing this claim, we will briefly address defendants' argument that the trial court improperly employed the standard of review of the commission's determination of necessity.

The commission sought to acquire certain grading rights, muck removal rights and fee parcels outside of the sixty-six foot right of way under the condemnation act. The act itself sets forth the scope of court review of a public agency's determination of necessity. The agency's determination of public necessity is binding on the court in the absence of a showing of fraud, error of law, or abuse of discretion. MCL 213.56(2); MSA 8.265(6)(2). In challenging an agency's determination of necessity, the property owners bear the

[1] MCL 221.20; MSA 9.21.

burden of showing a lack of public necessity, either by fraud, error of law or abuse of discretion. *City of Center Line v Chmelko,* 164 Mich App 251, 257; 416 NW2d 401 (1987). In this case, the landowners claim that the trial court misapplied the standard of review because the court ignored the mandate of *State Highway Comm v Vanderkloot,* 392 Mich 159; 220 NW2d 416 (1974). In *Vanderkloot, supra,* p 166, our Supreme Court held that there is an environmental element in judicial review for "fraud or abuse of discretion" in condemnation matters. Contrary to the landowners' claim that the trial court failed to follow *Vanderkloot,* our review of the court's opinion clearly indicates that the court was aware of the case and dealt with the MEPA issue, devoting eight pages of its opinion to that analysis. The court clearly followed *Vanderkloot* and considered the environmental effects of the proposed road project in connection with the necessity review.

We now focus our attention on the highway by user issue. "Highway by user" is a term that is used to describe how the public may acquire title to a highway by a sort of prescription where no formal dedication has ever been made. *Rigoni v Michigan Power Co,* 131 Mich App 336, 343; 345 NW2d 918 (1984). The acquisition of highways by user is governed by MCL 221.20; MSA 9.21:

> All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for ten years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used eight years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. All high-

ways that are or that may become such by time and use, shall be 4 rods in width, and where they are situated on section or quarter section lines, such lines shall be the center of such roads, and the land belonging to such roads shall be 2 rods in width on each side of such lines.

The elements of a highway by user have been expanded to require evidence of a defined line of travel with definite boundaries, used and worked upon by public authorities, traveled upon by the public for ten consecutive years without interruption, in an open, notorious and exclusive manner. *Rigoni, supra,* pp 343-344 (and cases cited therein). If the elements are established, the statute operates to raise a rebuttable presumption that the road is four rods, or sixty-six feet wide. *Eyde Bros Development Co v Eaton Co Drain Comm'r,* 427 Mich 271, 298-299; 398 NW2d 297 (1986), reh den 428 Mich 1206 (1987).

However, this presumption may be rebutted if the landowner offers any evidence, such as the existence of a structure within the four-rod statutory width, or any other evidence, that the owner retained control of an area within the statutory width. *Bain v Fry,* 352 Mich 299, 305; 89 NW2d 485 (1958); *Eager v State Highway Comm'r,* 376 Mich 148, 151-152, 154; 136 NW2d 16 (1965). Once the presumption is rebutted, the highway cannot be wider than the zone of actual use which meets the highway by user test outlined above. *Eager, supra,* pp 154-155.

In *Rochow v Spring Arbor Twp,* 152 Mich App 773; 394 NW2d 102 (1986), this Court further addressed the question of what is needed for a landowner to rebut the presumption. The Court held that the presumption can be rebutted if the landowner's control of the disputed area was open,

notorious, and adverse during the ten-year period. *Id.,* p 778.

In our case, the property owners along Crahen Avenue must establish that they, or their predecessors in interest, took sufficient action during the running of the statutory ten-year period to give notice of their intention to maintain possession and control over the disputed area. Based on our review of the evidence, the landowners did not rebut the statutory presumption.

Marsha Bouwkamp, the Grand Rapids Township supervisor, testified after reviewing the township records. Those records established that township funds were used to repair Crahen Avenue on June 1, 1915. Thus, as of that date, Crahen Avenue was appropriated for public use. In order to prevail, the landowners were required to show that they (or their predecessors) took some action within the ten-year period, or by 1925. The only evidence which remotely may have tended to show possession within the disputed area was an alleged fence line shown on a set of 1929 blueprints. However, this was insufficient. Thus, the landowners failed to rebut the presumption. Their claim that the "planting" of the trees within the sixty-six-foot right of way constitutes control of the disputed area is also insufficient evidence. The landowners never established that the trees were planted between 1915 and 1925. Therefore, the trial court properly denied the landowners' motion to review necessity.

Next, in Docket No. 100694, MEPF and the other plaintiffs claim that the trial judge erred in finding that plaintiffs had not established a prima facie case under MEPA and that the judge made insufficient findings of fact. We disagree with both of these contentions.

At the outset, we note that in reviewing an

action under MEPA, this Court reviews the record de novo, although the trial court's findings of fact will not be overturned or modified unless they are clearly erroneous or the reviewing court is convinced it would have reached a different result had it occupied the bench at trial. *Rush v Sterner,* 143 Mich App 672, 678; 373 NW2d 183 (1985). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). After a review of the entire record, this Court is not left with a definite and firm conviction that a mistake has been made.

Under MEPA, the trial court must conduct a dual inquiry to determine if a prima facie showing of pollution, impairment, or destruction of a natural resource has been made: (1) whether a natural resource is involved, and (2) whether the impact of the activity on the environment rises to the level of impairment to justify the trial court's intervention. *City of Portage v Kalamazoo Co Rd Comm,* 136 Mich App 276, 279; 355 NW2d 913 (1984), lv den 422 Mich 883 (1985); *Kimberly Hills Neighborhood Ass'n v Dion,* 114 Mich App 495, 503; 320 NW2d 668 (1982), lv den 417 Mich 1045 (1983). In answering the latter question, the trial court should evaluate the environmental situation before the proposed action and compare it with the probable condition of the environment after. *Rush, supra,* p 679. Among the factors to be considered are: (1) whether the natural resource involved is rare, unique, endangered, or has historical significance; (2) whether the resource is easily replaceable (i.e., by replanting trees or restocking fish); (3) whether the proposed action will have any significant consequential effect on other natural re-

sources (for example, whether wildlife will be lost if its habitat is impaired or destroyed); and (4) whether the direct or consequential impact on animals or vegetation will affect a critical number, considering the nature and location of the wildlife affected. Finally, esthetic considerations by themselves do not constitute significant environmental impact. *Rush, supra.*

In applying the two-part test, plaintiffs have established that a natural resource is involved and, therefore, have satisfied the first part. The removal of trees constitutes destruction of natural resources under MEPA. *Portage, supra,* p 281. However, plaintiffs have not met the second part of the test, that the impact of the tree removal on the environment rises to the level of an impairment which justifies the issuance of an injunction.

The first factor considered in determining whether intervention by the court is justified requires the natural resource to be rare, unique, endangered, or of historical significance. Plaintiffs' expert, Bourdo, admitted that these trees are not unique and that many are sick and in the process of dying. He also stated that there are thousands of similar trees across the state and the country. Plaintiffs did not establish that the trees were of historical significance since the court disregarded Miller's testimony as constituting hearsay. The second factor looks at whether the resources are easily replaceable. In this case, they are easily replaceable since these type of trees are available and the county agreed to replace any trees that are removed because of the project.

The third and fourth factors were also not sufficiently established because there was no real evidence that the tree removal would have any significant consequential effect on wildlife, animals or vegetation. Plaintiffs did not establish that the

project would likely pollute, impair or destroy the air, water or other natural resource. MCL 691.1203(1); MSA 14.528(203)(1). Thus, the trial court's findings that plaintiffs failed to show a prima facie showing that this activity would impair, pollute or destroy a natural resource were not clearly erroneous.

Finally, plaintiffs assign error to the court's exclusion of Miller's testimony relating to the planting of the trees for America's centennial as hearsay not within any exception. Plaintiffs argue that this evidence fell within the hearsay exception of MRE 803(20). We find no merit to this claim of error.

The admissibility of evidence is a question submitted to the trial court's discretion and its decision will not be overturned absent an abuse of discretion. *Guider v Smith,* 157 Mich App 92, 103-104; 403 NW2d 505 (1987), lv gtd 429 Mich 858 (1987). MRE 803(20) provides:

> Reputation concerning boundaries or general history. Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community, a reputation as to events of general history important to the community or state or nation in which located.

Our research of this rule reveals no recent Michigan cases interpreting the rule. The most recent authority from our Supreme Court is the comment that MRE 803(20) is generally consistent with prior Michigan law. See 399 Mich 1014, citing *Stockton v Williams,* 1 Doug (Mich) 546, 570-575 (1845). Cf. *Walters v Union National Bank,* 314 Mich 699; 23 NW2d 184 (1946) (testimony of former owners and others admitted as to boundaries).

In *Ute Indian Tribe v State of Utah,* 521 F Supp

1072, 1149 (D Utah, 1981), the federal district court, in interpreting FRE 803(20), which is substantially identical to MRE 803(20), succinctly described this hearsay exception:

> While a long-standing reputation may serve as important evidence of the status of a boundary of immediate personal importance, *e.g.,* a private property line among neighbors, or of more universal importance, such as a national or state boundary, reputation in a *non-Indian* community as to *Indian* boundaries, rights, etc., is indeed a treacherous ground for decision. As the Advisory Committee Notes to the Federal Rules of Evidence, Rule 803(20), point out:
>
> "Trustworthiness in reputation evidence is found 'when the topic is such that the facts are likely to have been inquired about and persons having personal knowledge have disclosed facts which have thus been discussed in the community; and thus the community's conclusions if any has been found, is likely to be a trustworthy one.' 5 Wigmore § 1580, p. 444, . . . "
>
> To have significant probative value, the matter in question "must be one of general interest, so that it can accurately be said that there is a high probability that the matter underwent general scrutiny as the community reputation was formed." McCormick on Evidence § 324, at 750 (2d ed. 1972) (footnote omitted). Wigmore states this "general interest" requirement even more emphatically:
>
> "[T]he facts for which such an opinion or reputation can be taken as trustworthy must . . . be such facts as have been of interest to *all members of the community* as such, and therefore have been so likely to receive general and intelligent discussion and examination by competent persons, so that the community's received opinion on the subject cannot be supposed to have reached the condition of definite decision until the matter had gone, in public belief, beyond the state of controversy and had become settled with fair finality."

5 Wigmore on Evidence § 1598, at 564-565 (Chadbourn rev. 1974) (emphasis in original); see also, *id.*, §§ 1583-1597.

Miller testified that about twenty years ago three now deceased older gentlemen farmers told Miller: "We got old man Crahen to thank for these trees." Another gentlemen stated: "Yeah, well these here centennial trees were planted by the Crahens." When Miller was asked if there was a general reputation in and around Crahen Avenue that the trees were planted for the centennial, he responded: "Yes, I think so." We conclude that Miller's testimony was not supported by a sufficient showing of a community interest. These comments by the farmers did not meet the requirement that the matter be of general interest to all members of the community. Thus, the court's decision not to consider Miller's testimony was not an abuse of discretion.

Affirmed.