THOMAS TOWNSHIP v JOHN SEXTON CORPORATION OF
MICHIGAN

Docket No. 102191. Submitted June 9, 1988, at Lansing. Decided
December 6, 1988. Leave to appeal applied for.

John Sexton Corporation of Michigan applied to the Department
of Natural Resources for a permit to drain a sixty-two-acre
artificial lake in Thomas Township. The lake is actually a clay
pit created by a clay mining operation which ceased in 1969.
The pit filled with surface water runoff and rain. The lake has
an average depth of fifteen feet and has no inlet nor outlet.
John Sexton Corporation owned the lake and surrounding
property and wanted to drain the lake so that it could use the
excavation for a sanitary landfill. Thomas Township wanted to
acquire the property and develop it as a park site and inter-
vened in the application proceeding. A contested case hearing
was conducted, after which the hearing officer recommended
that John Sexton Corporation be granted a permit to drain the
lake subject to its obtaining a permit to construct a sanitary
landfill pursuant to the Solid Waste Management Act. The
Natural Resources Commission adopted the hearing officer's
findings of fact and conclusions of law and conditionally
granted the permit to drain the lake. Thomas Township peti-
tioned for review of the NRC's final decision in Saginaw Circuit
Court claiming that the decision was not supported by compe-
tent, material, and substantial evidence on the whole record
and that the decision was contrary to the Inland Lakes and
Streams Act and the Michigan Environmental Protection Act.
The court, Robert L. Kaczmarek, J., found that, because
Thomas Township was appealing the NRC's final decision under
the Administrative Procedures Act, the appropriate standard of
review was the substantial evidence standard. The court de-
clined to engage in a de novo review of the NRC's decision
under the MEPA, reasoning that de novo review would have
been appropriate only if Thomas Township had filed an original

REFERENCES

Am Jur 2d, Administrative Law §§ 201 et seq., 610 et seq., 621.
See the Index to Annotations under Administrative Law; Environ-
mental Law; Natural Resources.

action in circuit court. The court reversed the final decision and order of the NRC. John Sexton Corporation appealed.

The Court of Appeals *held:*

1. The substantial evidence standard is appropriate for review of the NRC's final decision. However, the Court of Appeals reviews de novo actions brought under the MEPA. To the extent that MEPA issues are involved in this case, a de novo standard of review will be used.

2. The circuit court assigned undue significance to the loss of the lake's potential recreational use.

3. The hearing officer's conclusions that destruction of the lake would have no significant effect on fish and that a sport fishery on the site would require intensive management withstand the substantial evidence standard of review. The circuit court erred by displacing the hearing officer's choice between two reasonably differing views on the issue of adverse effect upon fish.

4. The circuit court erred by failing to apply the substantial evidence standard of review to the hearing officer's determination that the draining of the lake would not violate the Inland Lakes and Streams Act prohibition against the unlawful destruction of the state's natural resources.

5. The circuit court erred in using a local perspective to answer the question whether the draining of the lake would have such an adverse impact upon natural resources that the draining of the lake would rise to the level of impairment or destruction of natural resources, which is prohibited under the MEPA. Proper application of MEPA's impairment standard requires the application of a statewide perspective. The hearing officer's decision withstands the substantial evidence standard of review. From a statewide perspective, draining the lake will not constitute the impairment or destruction of a natural resource under MEPA.

The decision of the circuit court is reversed.

1. ADMINISTRATIVE LAW — ENVIRONMENT — NATURAL RESOURCES
   COMMISSION — APPEAL — STANDARD OF REVIEW.

   The appropriate standard of review of a final decision of the Natural Resources Commission is the substantial evidence standard where the appeal is brought under the Administrative Procedures Act; however, the Court of Appeals reviews de novo actions brought under the Michigan Environmental Protection Act and, to the extent that an appeal brought under the APA involves MEPA issues, the Court will use a de novo standard of review as to those issues (Const 1963, art 6, § 28; MCL

24.306[1][d], 691.1201 *et seq.*; MSA 3.560[206][1][d], 14.528[201] *et seq.*).

2. ADMINISTRATIVE LAW — APPEAL — STANDARD OF REVIEW — SUBSTANTIAL EVIDENCE.

   The substantial evidence standard of review of administrative decisions requires that the review be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views.

3. ENVIRONMENT — NATURAL RESOURCES — ENVIRONMENTAL PROTECTION ACT.

   The determination whether there is impairment or destruction of a natural resource within the meaning of the Michigan Environmental Protection Act must focus upon the overall statewide effect upon the wildlife populations at issue rather than upon the individual animals affected or upon limited local populations (MCL 691.1201 *et seq.*; MSA 14.528[201] *et seq.*).

*Mark T. Mahlberg,* and *Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Edward J. McArdle*), for petitioner.

*Honigman, Miller, Schwartz & Cohn* (by *Gary A. Trepod* and *Sandra L. Jasinski*), for respondent.

Amicus Curiae:

Michigan United Conservation Clubs, Inc. (by *M. Carol Bambery*).

Before: DANHOF, C.J., and SAWYER and D. R. FREEMAN,* JJ.

PER CURIAM. Respondent appeals as of right from a Saginaw Circuit Court opinion and order which reversed a final decision and order of the Natural Resources Commission. The NRC granted respondent an Inland Lakes and Streams Act

* Circuit judge, sitting on the Court of Appeals by assignment.

(ILSA) permit to drain a sixty-two-acre artificial lake in Thomas Township, Saginaw County, Michigan.

The above-mentioned lake is a clay pit which filled with surface water runoff and rain after a clay mining operation ceased in 1969. The parties' positions are illustrated by petitioner's calling the body of water a lake and respondent's calling it a clay pit. We will refer to it as a lake. The lake had an average depth of fifteen feet. It had no inlet nor outlet. Respondent owned the lake and the surrounding land.

Respondent applied for an ILSA permit to drain the lake so that it could use the excavation for a sanitary landfill. Petitioner intervened in the proceeding. After conducting a contested case hearing, a hearing officer issued a proposal for decision recommending that respondent be granted an ILSA permit to drain the lake subject to respondent's obtaining a permit to construct a sanitary landfill pursuant to the Solid Waste Management Act, MCL 299.401 *et seq.*; MSA 13.29(1) *et seq.* The NRC conditionally granted respondent the ILSA permit after adopting the hearing officer's findings of fact and conclusions of law.

Thomas Township petitioned for review of the NRC's final decision in the lower court under MCL 24.304; MSA 3.560(204) of the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.* Petitioner claimed that the decision was not supported by competent, material, and substantial evidence on the whole record. Petitioner also claimed that the decision was contrary to MCL 281.957; MSA 11.475(7) of the ILSA, MCL 281.951 *et seq.*; MSA 11.475(1) *et seq.*, and MCL 691.1205; MSA 14.528(205) of the Michigan Environmental Protection Act (MEPA), MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.*

The lower court found that because petitioner was appealing the NRC's final decision under the APA, the appropriate standard of review was the "substantial evidence" standard of Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206)(1)(d); *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 121-124; 223 NW2d 283 (1974). The court declined to engage in a de novo review of the NRC's decision under MEPA, reasoning that de novo review would only have been appropriate if petitioner had filed an original action in circuit court.

The substantial evidence standard is appropriate for this review of the NRC's final decision. "Substantial evidence" means evidence which a reasoning mind would accept as sufficient to support a conclusion. It consists of more than a scintilla, but may be less than a preponderance of the evidence. Michigan appellate courts give considerable deference to administrative agencies' fact-finding and weighing of evidence. *Felton v Dep't of Social Services,* 161 Mich App 690, 695; 411 NW2d 829 (1987). However, this Court reviews de novo actions brought under the MEPA. *City of Portage v Kalamazoo Co Road Comm,* 136 Mich App 276, 279; 355 NW2d 913 (1984), lv den 422 Mich 883 (1985). To the extent that this case involves MEPA issues, we will use a de novo standard of review. *West Michigan Environmental Action Council v Natural Resources Comm,* 405 Mich 741, 752-754; 275 NW2d 538 (1979), cert den sub nom *Shell Oil Co v West Michigan Environmental Action Council, Inc,* 444 US 941; 100 S Ct 295; 62 L Ed 2d 307 (1979); *Michigan Waste Systems v Dep't of Natural Resources,* 147 Mich App 729, 734-735; 383 NW2d 112 (1985), lv den 424 Mich 900 (1986).

The ILSA provides that a person shall not "diminish an inland lake" without a permit from the Department of Natural Resources. MCL 281.953(d);

MSA 11.475(3)(d). The criteria for issuing an ILSA permit are set forth in MCL 281.957; MSA 11.475(7):

> The department shall issue a permit if it finds that the structure or project will not adversely affect the public trust or riparian rights. In passing upon an application the department shall consider the possible effects of the proposed action upon the inland lake or stream and upon waters from which or into which its waters flow and the uses of all such waters, including uses for recreation, fish and wildlife, aesthetics, local government, agriculture, commerce and industry. The department shall not grant a permit if the proposed project or structure will unlawfully impair or destroy any of the waters or other natural resources of the state. This act shall not modify the rights and responsibilities of any riparian owner to the use of his riparian water.
>
> A permit shall specify that a project completed in accordance with this act shall not cause unlawful pollution as defined by Act No. 245 of the Public Acts of 1929, as amended.

The hearing officer found that the then-existing recreational uses of the lake were by trespassers. Those uses would be lost if the lake were drained or effectively fenced. Petitioner wanted to acquire the property and develop it as a park site. Respondent had no interest in selling the property or developing a recreational facility. The hearing officer found that the lake was hazardous and unsuitable for public recreational use because of its steep and eroding banks, deep turbid water, and slippery bottom. He noted that the parties' disagreement did not concern the lake's current condition, but its recreational potential. Petitioner claimed that a recreational facility could be created with modest expenditures of money while

respondent claimed that large expenditures would be needed. The hearing officer described the improvements that were needed to make the lake safe for swimming, accessible for boats, and otherwise adequate as a recreational facility. The hearing officer concluded that the only loss which would result from granting the permit was of a potential recreational use.

The lower court did not dispute the hearing officer's findings of fact. However, the court found that the hearing officer downplayed the significance of the loss of the lake's potential recreational use, in violation of MCL 281.957; MSA 11.475(7) and contrary to his findings of fact. We disagree. The hearing officer's proposal for decision demonstrates that he met the MCL 281.957; MSA 11.475(7) requirement of considering recreational use. The lower court assigned undue significance to this consideration.

The lower court noted that the evidence supported the hearing officer's findings that the lake and surrounding land had no significant or unique value from a wildlife perspective, the lake's dominant fish was stunted carp, and that the lake would have to be modified in order to support a healthy fish population. However, the court disagreed with the hearing officer's conclusions that destruction of the lake would have no significant effect on fish and that a sport fishery on the site would require intensive management. Although conflicting testimony was presented on the fish consideration, the hearing officer's decision withstands the substantial evidence standard of review. The lower court erred by displacing the hearing officer's choice between two reasonably differing views. *MERC, supra,* p 124.

The lower court did not disagree with the hearing officer's findings on aesthetics, local govern-

ment, agriculture, commerce, and industry. We also find no error on these matters.

To determine whether the proposed project would violate the statutory prohibition against the unlawful destruction of this state's natural resources, the hearing officer considered the requirements of 1979 AC, R 281.814:

> Rule 4. In each application for a permit, all existing and potential adverse environmental effects shall be determined and a permit shall not be issued unless the department determines all of the following:
>
> (a) That the adverse effects to the environment and the public trust are minimal and will be mitigated to the extent possible.
>
> (b) That the resource affected is not a rare resource.
>
> (c) That the public interest in the proposed development is greater than the public interest in the unavoidable degradation of the resource.
>
> (d) That no feasible and prudent alternative location is available.

The lower court disagreed with all of the hearing officer's Rule 4 determinations. The court erred by failing to apply the substantial evidence standard of review. *MERC, supra,* pp 121-124. Although there was conflicting evidence on each factor, the hearing officer's determinations were supported by competent, material, and substantial evidence on the whole record. The lower court's disagreements with the hearing officer's determinations were largely based on a differing interpretation of Rule 4's requirements. Deference should be given to an agency's interpretation of its own rules. *Sibel v Dep't of State Police,* 154 Mich App 462, 465; 397 NW2d 828 (1986), lv den 428 Mich 870 (1987).

Finally, we consider whether MEPA prohibits draining the lake. MCL 691.1205(2); MSA 14.528(205)(2) provides:

> In any such administrative, licensing or other proceedings, and in any judicial review thereof, any alleged pollution, impairment or destruction of the air, water or other natural resources or the public trust therein, shall be determined, and no conduct shall be authorized or approved which does, or is likely to have such effect so long as there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare.

The "pollution, impairment or destruction" standard is derived from Const 1963, art 4, § 52:

> The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction.

Virtually all human activities can be found to have an adverse effect upon natural resources in some way or another. The real question before us is when does such impact rise to the level of impairment or destruction. *West Michigan Environmental Action Council, supra,* p 760. The hearing officer used a statewide perspective to answer this question:

> Proper application of the impairment standard as it pertains to the preservation of animal and plant life does not limit conservation only to resources that are "biologically unique" or "endangered"; a statewide perspective is necessary. A

focus on narrow local problems is contrary to the intent of the Legislature to carry out its constitutional duty under Const 1963, art 4, § 52. For example, in dealing with wildlife, adverse impact must be evaluated, not in the context of individual animals or neighborhoods, but in the context of populations and ecological communities. [*Kimberly Hills Neighborhood Ass'n v Dion,* 114 Mich App 495, 507; 320 NW2d 668 (1982), lv den 417 Mich 1045 (1983).]

The hearing officer found that the lake had a low intrinsic ecological value and that draining it would not cause pollution. He also found that the lake's only significant value was as a potential recreational facility and that realization of that value required acquisition and alteration of the site. The record indicates that petitioner could not afford to purchase and develop the site into a safe and useful facility. The hearing officer noted that from a statewide perspective, there were many properties with high recreational value and many more with recreational potential. The hearing officer concluded that the ILSA permit should be issued because draining the lake would not constitute impairment or destruction under MEPA.

The lower court noted that the result of the MEPA analysis in this case is different depending on whether a statewide or local perspective is used. The lower court adopted the local perspective which was suggested in *Rush v Sterner,* 143 Mich App 672, 680, n 1; 373 NW2d 183 (1985), and *City of Portage, supra,* p 283, n 2. The court concluded that draining the lake would violate MEPA, reasoning that although the lake would be considered an abandoned clay pit filled with water if it were located elsewhere, in Saginaw County it was a rare resource.

The lower court erred in using a local perspec-

tive. Proper application of MEPA's impairment standard requires a statewide perspective. *Kimberly Hills, supra,* p 507. One panel of this Court merely noted its disagreement with the *Kimberly Hills* holding that a statewide rather than a local perspective is always necessary when addressing the alleged impairment or destruction of animal or plant life. That panel concluded that under either perspective, the removal of trees and impoundment of a locally unique trout stream did not constitute the impairment or destruction of a natural resource under MEPA. *Rush, supra,* p 680; *City of Portage, supra,* p 283.

This case does not concern the destruction of animal or plant life, nor the loss of a valuable natural resource. The lake is an abandoned clay pit filled with water which is hazardous to people and property. The lake's only significant value is its potential to be a recreational facility. The record indicates that this potential would not be realized even if the lake were not drained.

The hearing officer's decision withstands the substantial evidence standard of review. From a statewide perspective, draining the lake will not constitute the impairment or destruction of a natural resource under MEPA.

Reversed.