ATTORNEY GENERAL ex rel NATURAL RESOURCES
COMMISSION v BALKEMA

Docket No. 110275. Submitted May 15, 1991, at Grand Rapids. De-
cided September 4, 1991, at 9:10 A.M.

The Attorney General, on behalf of the Natural Resources Com-
mission and the Director of the Department of Natural Re-
sources, brought an action in the Kalamazoo Circuit Court
against Ralph Balkema and others pursuant to the Inland
Lakes and Streams Act, MCL 281.951 et seq.; MSA 11.475(1) et
seq., and the Michigan Environmental Protection Act, MCL
691.1201 et seq.; MSA 14.528(201) et seq., seeking to enjoin the
defendants from draining three shallow bodies of water. The
court, Robert L. Borsos, J., initially granted a preliminary
injunction, but subsequently granted summary disposition for
the defendants, determining that the bodies of water were not
subject to the Inland Lakes and Streams Act because they were
not lakes and that the plaintiff failed to present a prima facie
case under the Michigan Environmental Protection Act. The
court also awarded damages to the defendants for losses they
incurred while the preliminary injunction was in effect. The
plaintiff appealed.

The Court of Appeals held:

1. The trial court erred in determining that the bodies of
water were not lakes. The Inland Lakes and Streams Act
defines "inland lake or stream" to include any body of water
that has definite banks, a bed, and visible evidence of a contin-
ued flow or continued occurrence of water. The plaintiff pre-
sented sufficient evidence establishing that the bodies of water
were inland lakes as defined by the act.

2. The trial court erred in concluding that the plaintiff failed
to establish a prima facie case for judicial intervention pursu-
ant to the Michigan Environmental Protection Act. The plain-
tiff presented evidence showing that the defendants' conduct
would likely impair or destroy a natural resource.

3. The trial court erred in awarding damages to the defen-
dants in light of the fact that summary disposition for the
defendants was improper.

Reversed.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Thomas J. Emery* and *Kevin T. Smith,* Assistant Attorneys General, for the plaintiff.

*Early, Lennon, Fox, Thompson, Peters & Crocker* (by *Richard H. Morris*), for the defendants.

Before: HOOD, P.J., and MCDONALD and FITZGERALD, JJ.

PER CURIAM. Plaintiff Attorney General, on behalf of the Natural Resources Commission and the Director of the Department of Natural Resources, appeals as of right from a June 22, 1984, judgment dismissing the complaint for injunctive relief against defendants Ralph Balkema, Nina Louise Balkema, John Balkema, Dorothy I. Balkema, and Balkema, Inc., and ordering the DNR to pay defendants damages of $48,603 and costs. An order denying plaintiff's motion for a new trial and amending the June 22, 1984, findings of fact with additional findings adopted by the court at the hearing on the motion for a new trial was entered on June 28, 1988. We reverse.

On appeal, plaintiff first claims the court clearly erred in dismissing the claim against defendants brought pursuant to the Inland Lakes and Streams Act, MCL 281.951 *et seq.*; MSA 11.475(1) *et seq.* (ILSA). We agree.

The ILSA was enacted, inter alia, to regulate inland lakes and streams, to protect the public trust in those lakes and streams, to prescribe powers and duties, and to provide remedies and penalties. The ILSA defines the areas to which it pertains. MCL 281.952; MSA 11.475(2). Certain activities are proscribed on those lands without a

permit from the DNR. MCL 281.953; MSA 11.475(3). The DNR can deny a permit if the proposed project will unlawfully impair or destroy any of the waters or other natural resources of the state. MCL 281.957; MSA 11.475(7). The DNR may commence a civil action in circuit court to enforce compliance with the ILSA or to restrain a violation of the ILSA. MCL 281.963(1); MSA 11.475(13)(1). There are exemptions from the permit requirement, including one for the construction and maintenance of a private agricultural drain regardless of outlet. MCL 281.954(d); MSA 11.475(4)(d).

At issue here is whether the subject areas contain lakes, thereby subjecting defendants' activity in draining the area to the requirements of the ILSA. MCL 281.952; MSA 11.475(2) provides in pertinent part:

> As used in this act:
>
> \* \* \*
>
> (f) "Inland lake or stream" means a natural or artificial lake, pond, or impoundment . . . or any other body of water which has definite banks, a bed and visible evidence of a continued flow or continued occurrence of water, including the St. Marys, St. Clair and Detroit rivers. It does not include the Great Lakes, Lake St. Clair and a lake or pond which has a surface area of less than 5 acres.
>
> \* \* \*
>
> (h) "Ordinary high water mark" means the line between upland and bottomland which persists through successive changes in water levels, below which the presence of action of the water is so common or recurrent that the character of the land is marked distinctly from the upland and is apparent in the soil itself, the configuration of the surface of the soil and the vegetation. . . .

The trial court dismissed the ILSA claim upon

defendants' motion at the close of plaintiff's proofs, determining plaintiff failed to establish a prima facie case. The court determined the subject areas did not contain lakes as defined in MCL 281.952(f); MSA 11.475(2)(f). Specifically, the trial court determined the areas were not lakes in layman's terms because they did not contain open water, had vegetation growing above the surface of the water, and were not consistent in depth. The court then examined plaintiff's proofs of the statutory elements of a lake or stream as provided in subsection f: evidence of continued occurrence of water, of a bed, and of a bank. Although the court found plaintiff presented sufficient evidence of a continued occurrence of water and evidence of a lake bed, the court found plaintiff failed to present sufficient evidence of a bank. The court clearly erred in finding plaintiff presented insufficient evidence of a bank.

The evidence, received during five days of testimony, established that a sloping shoreline *is* a bank and that the presence of an ordinary high water line showed a definite containment of the lake area, which in the opinion of DNR officers also established the presence of a definite bank. One witness, the head of the survey unit of the engineering division of the DNR, defined a bank as a sloping area of ground surrounding a lake that changed character as it entered the lake. He noted that a bank would change in vegetation cover from aquatic to upland. The bank's contour would match the confinement of the water within the lake basin. Another witness, an aquatic biologist with the ILSA management unit of the DNR, testified that the subject areas met the criteria set forth in the ILSA regarding banks, bed, and evidence of continued occurrence of water. This witness defined a bank as a slope, determined the

subject areas contained three older lakes, and testified that he had probed the bottom of the areas and found much peat had accumulated over a long period of time, filling in the original lake basin. He believed the areas in question were lakes and also noted that natural lakes can be shallow.

The court heard no evidence that there were no banks. The court heard no evidence that a sloping shoreline was not a bank. The court even admitted that most lakes in Michigan had no definite banks, but had sloping declines. If we were to accept the court's apparent definition of "lake," few inland lakes would be subject to the ILSA. The court made a determination that was not based on any evidence and directly contradicted the evidence presented. Dismissal of plaintiff's ILSA claim constituted error. *Warren v June's Mobile Home Village & Sales, Inc*, 66 Mich App 386; 239 NW2d 380 (1976).

Plaintiff also claims error in the court's dismissal of the claim under the Michigan Environmental Protection Act, MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.* Once again we agree.

MCL 691.1203(1); MSA 14.528(203)(1) provides:

> When the plaintiff in the action has made a prima facie showing that the conduct of the defendant has, or is likely to pollute, impair or destroy the air, water or other natural resources or the public trust therein, the defendant may rebut the prima facie showing by submission of evidence to the contrary. The defendant may also show, by way of an affirmative defense, that there is no feasible and prudent alternative to defendant's conduct and that such conduct is consistent with the promotion of the public health, safety and welfare in light of the state's paramount concern for the protection of its natural resources from pollution, impairment or destruction. Except as to

the affirmative defense, the principles of burden of proof and weight of the evidence generally applicable in civil actions in the circuit courts shall apply to actions brought under this act.

In determining whether a prima facie case under the MEPA has been established, a court must not weigh the environmental risk with the good to be accomplished by the action. Rather, the court must determine whether the action rises to the level of an impairment or destruction of a natural resource so as to constitute an environmental risk. *Portage v Kalamazoo Co Rd Comm,* 136 Mich App 276; 355 NW2d 913 (1984).

Applying the proper factors:

> (1) whether the natural resource involved is rare, unique, endangered, or has historical significance, (2) whether the resource is easily replaceable (for example, by replanting trees or restocking fish), (3) whether the proposed action will have any significant consequential effect on other natural resources (for example, whether wildlife will be lost if its habitat is impaired or destroyed), and (4) whether the direct or consequential impact on animal or vegetation will affect a critical number, considering the nature and location of the wildlife affected, [*Id.* at 282.]

we find the court clearly erred in determining plaintiff failed to present a prima facie case under the MEPA. The testimony presented indicated Kramer Marsh, of which the subject areas were a part, with its unique type of vegetation attracts more water fowl than any other inland area in southwest Michigan and contains the largest concentration of black tern, a species declining in number. Draining the subject areas would lessen the capacity of the total system to act as a sediment trap for retaining harmful elements, placing

greater stress on the remaining system. Summary disposition was improperly granted.

Plaintiff next claims the court lacked the authority to require the state to post a bond as a basis for granting the requested preliminary injunction. We agree that imposition of the bond was improper. MCL 600.2615; MSA 27A.2615. Defendants concede this argument.

Lastly, plaintiff argues the court erred in awarding defendants damages for losses incurred with the cessation of pumping and the consequent inability to plant crops in the areas in question. Given our finding that summary disposition was improperly granted in favor of defendants, it follows that the award of damages was premature. Moreover, we note the applicability of governmental immunity. The DNR is immune from liability in tort while it is engaged in the exercise of a governmental function, 1964 PA 170, MCL 691.1407; MSA 3.996(107). The DNR was specifically authorized to initiate an action to enjoin violations of the ILSA and the MEPA, MCL 281.963(1); MSA 11.475(13)(1); MCL 691.1202(1); MSA 14.528(202)(1).

Reversed.