## TROUT UNLIMITED, MUSKEGON-WHITE RIVER CHAPTER v CITY OF WHITE CLOUD

Docket No. 137067. Submitted June 9, 1992, at Grand Rapids. Decided August 3, 1992, at 10:10 A.M.

Trout Unlimited, Muskegon-White River Chapter, and Richard McEwen brought an action in the Newaygo Circuit Court against the City of White Cloud, seeking a declaration that the city had undertaken an illegal reconstruction of a dam in the White River. The court, Anthony A. Monton, J., following a bench trial, entered a judgment of no cause of action, determining that the plaintiffs lacked standing to sue. The plaintiffs appealed.

The Court of Appeals *held:*

1. McEwen, as a riparian landowner, and Trout Unlimited, as a nonprofit corporation whose members advocate the preservation and improvement of cold-water fishing resources, demonstrated legally protected interests that could be affected adversely by the disputed reconstruction of the dam and therefore have standing to maintain their action.

2. The plaintiffs also have standing pursuant to § 2(1) of the Environmental Protection Act, MCL 691.1202(1); MSA 14.528(202)(1), which allows any person or legal entity to maintain an action in circuit court for declaratory and injunctive relief for the protection of a natural resource from pollution, impairment, or destruction.

Reversed and remanded.

ENVIRONMENT — ACTIONS — PARTIES — ENVIRONMENTAL PROTECTION ACT.

The Environmental Protection Act provides standing to bring an

### REFERENCES

Am Jur 2d, Administrative Law §§ 575, 576; Pollution Control §§ 494-506.

Standing of private citizen, association, or organization to maintain action in federal court for injunctive relief against commercial development or activities, or construction of highways, or other governmental projects, alleged to be harmful to environment in public parks, other similar recreational areas, or wildlife refuges. 11 ALR Fed 556.

Landowner's right to relief against pollution of his water supply by industrial or commercial waste. 39 ALR3d 910.

action for declaratory and injunctive relief against the reconstruction of a dam to a riparian landowner who demonstrates possible adverse effects of reconstruction on the property and to a nonprofit corporation whose members advocate the protection and improvement of cold-water fishing resources that may be affected adversely by reconstruction (MCL 691.1202[1]; MSA 14.528[202][1]).

*McCroskey, Feldman, Cochrane & Brock* (by *J. Walter Brock*), for the plaintiffs.

*Landman, Latimer, Clink & Robb* (by *David L. Bossenbroek*), for the defendant.

Before: SHEPHERD, P.J., and CONNOR and M. F. SAPALA,* JJ.

SHEPHERD, P.J. Plaintiffs appeal as of right the circuit court's judgment of no cause of action entered on January 4, 1991. We reverse and remand for new findings consistent with this opinion.

This case involves the repair and construction of a dam in the White River in Newaygo County. Since 1951, defendant has owned the dam, originally built over one hundred years ago, and has maintained a park on the lake behind the dam, providing recreational activities such as picnicking, swimming, fishing, and boating. The dam divides the upper and middle White River. The White Cloud River starts about 7.5 miles upstream from White Cloud. This section of the river, known as the Upper White River, is a blue-ribbon trout stream, a designation applied by the Michigan Department of Natural Resources to a few select rivers in Michigan. The section of the White River downstream from White Cloud to Hesperia, known as the Middle White, is 26.5 miles in length. This

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

section of the river has been designated as a County Scenic River pursuant to the Natural River Act, MCL 281.761 *et seq.*; MSA 11.501 *et seq.* The Middle White ends at the Hesperia Dam, a low-head dam, whose primary function is to prevent the migration of salmon and steelhead so as to allow the development of a brown, brook, and rainbow trout fishery in the Middle and Upper White. The Lower White, which runs from Hesperia to White Lake, is of no concern to this case. Plaintiff Trout Unlimited, Muskegon-White River Chapter (TU) is a private, nonprofit corporation dedicated to preserving and improving cold-water fishing resources. Plaintiff McEwen is both a TU member and a riparian landowner on the Middle White.

On September 9, 1986, it began raining in western Michigan and continued to do so for several days, swelling most of the rivers to their breaking point and washing out nineteen dams. When it appeared that defendant's dam was in imminent danger of collapsing, defendant city officials decided to breach the dam in order to prevent the entire dam from washing away. By the time the rains stopped, the dam was virtually destroyed and the lake was reduced to a stream. Plaintiffs allege that defendant's breach of the dam permitted the release into the Middle White River of sand and silt that had built up in the lake behind the dam, destroying fish cover and spawning beds and killing virtually the entire fish population.

After the flood, defendant applied for and received grants of approximately $500,000 from the Federal Emergency Management Agency (FEMA) and the Community Development Block Grant Program to repair and reconstruct the dam. Defendant also applied to the DNR for the necessary permits to rebuild the dam. On November 18,

1988, the DNR denied a permit for the rebuilding of the dam. In reaching its decision, the DNR stated that the middle section of the White River would be a better trout stream if the White Cloud dam were not repaired.

To allow repair of the dam without a DNR permit, the Legislature amended the Dam Safety Act, MCL 281.1301 *et seq.*; MSA 11.420(1) *et seq.*, by enacting 1988 PA 484, exempting defendant from the DNR permit requirement. The FEMA approved the project after an environmental study determined that repair of the dam would have no significant environmental effect. The dam was rebuilt in the summer of 1990 and is now in full operation.

On January 19, 1990, plaintiffs filed a thirteen-count complaint. On June 12, 1990, plaintiffs filed a motion for partial summary disposition, which, after a hearing, was denied by an order dated July 17, 1990. On July 23, 1990, plaintiffs amended their complaint to include a request for attorney fees. On September 6, 1990, the parties stipulated that no evidence would be submitted at trial concerning damages and requested the trial court to enter an opinion and order in the form of declaratory relief. Six of the thirteen counts in the complaint involve damages and were not tried. At trial, plaintiffs claimed the dam was unlawfully reconstructed and alleged: (1) fraud; (2) violation of the public trust; (3) violation of the constitutional prohibition against local legislation; (4) failure to obtain approval from the DNR; (5) failure to obtain approval from the county; and (6) failure to obtain approval from the Natural Resources Commission. Following a bench trial, the trial court, incorporating its opinion of December 11, 1990, entered a judgment of no cause of action in favor of defendant, ruling that plaintiffs had lacked standing.

Although plaintiffs raise various issues on appeal, the principal issue before us is whether the trial court erred in dismissing plaintiffs' claims on the ground that they lacked standing to assert their claims. Plaintiffs argue that they have standing to sue under the Michigan Constitution and the Environmental Protection Act (MEPA), MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.* Plaintiffs argue that Const 1963, art 4, § 52 recognized that citizens' groups have standing to challenge an activity that may violate the government's duty to manage public lands properly. This article provides:

> The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water, and other resources of the state from pollution, impairment and destruction.

Plaintiffs also assert standing under the MEPA, which provides for declaratory and equitable relief upon a plaintiff's prima facie showing that a natural resource is involved and that the effect of the activity in question on the environment rises to a level of impairment that will justify the relief. *City of Portage v Kalamazoo Co Rd Comm,* 136 Mich App 276, 280; 355 NW2d 913 (1984). The Michigan Supreme Court in *State Hwy Comm v VanderKloot,* 392 Mich 159; 220 NW2d 416 (1974), held that the MEPA is the primary statute enacted by the Legislature to fulfill its duty to protect our natural resources. Section 2(1) of the MEPA provides in part:

> [A]ny person, partnership, corporation, association, organization or other legal entity may main-

tain an action in the circuit court having jurisdiction where the alleged violation occurred or is likely to occur for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof . . . for the protection of the air, water and other natural resources and the public trust therein from pollution, impairment or destruction. [MCL 691.1202(1); MSA 14.528(202)(1).]

In this case, we find that plaintiffs have standing to raise their claims. To have standing, a plaintiff must demonstrate a legally protected interest that is in jeopardy of being adversely affected. *Health Central v Ins Comm'r,* 152 Mich App 336, 347-348; 393 NW2d 625 (1986). To have standing, a party must allege a sufficient personal stake in the outcome of the controversy to ensure that the dispute sought to be adjudicated will be presented in an adversarial context that is capable of judicial resolution. *Karrip v Cannon Twp,* 115 Mich App 726, 733; 321 NW2d 690 (1982); *Baker v Carr,* 369 US 186, 204; 82 S Ct 691; 7 L Ed 2d 663 (1962); *Sierra Club v Morton,* 405 US 727, 731-732; 92 S Ct 1361; 31 L Ed 2d 636 (1972); *Lujan v Defenders of Wildlife,* 504 US —; 112 S Ct 2130; 119 L Ed 2d 351 (1992). Generally, a plaintiff shows a personal stake in a lawsuit by demonstrating that he has been injured or represents someone who has been injured. *Kaminskas v Detroit,* 68 Mich App 499; 243 NW2d 25 (1976). A nonprofit corporation has standing to advocate interests of its members where the members themselves have a sufficient stake or have sufficiently adverse and real interests in the matter being litigated. *Karrip, supra; White Lake Improvement Ass'n v City of Whitehall,* 22 Mich App 262; 177 NW2d 473 (1970).

Plaintiff McEwen has standing in this case, hav-

ing demonstrated a legally protected interest that is in jeopardy of being adversely affected. As a riparian landowner on the Middle White River, he has standing to challenge the legality of the new dam construction because of the damage that it may cause to his property.

Plaintiff TU also has standing. The proofs established that TU is a nonprofit corporation with a specific purpose of protecting cold-water resources. Further, the vast majority of the local members of TU own property around the White River and use the river. Given that the personal interest and stake of these members in this controversy are sufficiently adverse and real, plaintiff TU has standing to advocate the interests of its members in this action. *Karrip, supra; White Lake Improvement Ass'n, supra.*

Further, plaintiffs have standing under § 2(1) of the MEPA. As stated earlier, § 2(1) provides standing to private parties to bring lawsuits for declaratory and injunctive relief to protect our natural resources. *VanderKloot, supra.* Contrary to the trial court's assertion, plaintiffs' reliance on this statute is not misplaced. Even though plaintiffs made no mention of the MEPA in their complaint and mentioned it for the first time in a posttrial brief on the issue of standing, plaintiffs' claims in this case are based upon the MEPA, which provides for declaratory relief upon plaintiffs' making a prima facie showing of pollution, impairment, or destruction of a natural resource. *City of Portage, supra.* Under the MEPA, the trial court must conduct a dual inquiry to determine whether a natural resource is involved and whether the effect of the activity on the environment rises to the level of impairment to justify the court's intervention. *Kent Co Rd Comm v Hunting,* 170 Mich App 222;

428 NW2d 353 (1988). In *Hunting,* this Court stated:

> In answering the latter question, the trial court should evaluate the environmental situation before the proposed action and compare it with the probable condition of the environment after. *Rush* [*v Sterner,* 143 Mich App 672; 373 NW2d 183 (1985)], p 679. Among the factors to be considered are: (1) whether the natural resource involved is rare, unique, endangered, or has historical significance; (2) whether the resource is easily replaceable (i.e., by replanting trees or restocking fish); (3) whether the proposed action will have any significant consequential effect on other natural resources (for example, whether wildlife will be lost if its habitat is impaired or destroyed); and (4) whether the direct or consequential impact on animals or vegetation will affect a critical number, considering the nature and location of the wildlife affected. Finally, esthetic considerations by themselves do not constitute significant environmental impact. *Rush, supra.* [170 Mich App 233-234.]

Accordingly, we reverse the decision of the trial court, which dismissed plaintiffs' claims on the ground that they lacked standing, and remand for new findings consistent with this opinion. We express no opinion regarding the merits of plaintiffs' claims or the nature of the relief the plaintiffs may obtain under the MEPA or plaintiff McEwen may obtain as a riparian owner. We merely hold that plaintiffs have standing to assert their claims in this action.

Reversed and remanded.