## WORTELBOER v BENZIE COUNTY

Docket No. 152092. Submitted April 4, 1995, at Grand Rapids. Decided July 21, 1995, at 9:00 A.M.

Fred A. and Betty L. Wortelboer brought an action in the Benzie Circuit Court against Benzie County and the Benzie County Board of Commissioners after the defendants brought proceedings in the circuit court pursuant to the Inland Lake Level Act, MCL 281.61 *et seq.*; MSA 11.300(1) *et seq.*, that resulted in the establishment of two seasonal lake levels of Crystal Lake in Benzie County. The plaintiffs own real property that abuts the outlet stream from the lake, and that stream and the plaintiffs' property are affected by the changing levels of the lake. The trial court, John F. Huft, J., denied the defendants' motion for summary disposition. The defendants appealed by leave granted.

The Court of Appeals *held:*

1. The plaintiffs are "interested persons" under the Inland Lake Level Act and have alleged a personal stake in this controversy and demonstrated an injury to their enjoyment of the stream sufficient to have standing to bring this action. However, although the plaintiffs have standing, the act does not provide them with a basis for recovery. The act does not create or protect individual rights regarding inland lake levels or create a civil cause of action for the benefit of individuals who are not satisfied with the county's exercise of authority. The plaintiffs' proper remedy under the act is to petition the circuit court for reconsideration of the lake levels.

2. The circuit court order establishing two seasonal lake levels did not violate the Inland Lake Level Act. The defendants' motion for summary disposition regarding this claim should have been granted.

3. The plaintiffs were not entitled to receive notice of the petition to the circuit court for the establishment of the levels

REFERENCES

Am Jur 2d, Constitutional Law § 829; Notice § 38; Pollution Control §§ 535, 581; Waters §§ 55, 58.

See ALR Index under Lakes and Ponds; Notice and Knowledge; Pollution; Publication.

of the lake pursuant to the Inland Lake Level Act, and there was no violation of the plaintiffs' right to due process as a result of the failure to give the plaintiffs actual notice of the hearing. The notice by publication to all persons, such as the plaintiffs, who were not within the special assessment district applicable to the lake satisfied due process. The plaintiffs' claims in this regard should have been disposed of through the granting of the defendants' motion for summary disposition.

4. The defendants' conduct in passing a resolution to authorize the circuit court proceeding to establish two lake levels was not the type of conduct that was likely to lead to the pollution, impairment, or destruction of natural resources. The defendants' conduct was not sufficient to invoke the Michigan Environmental Protection Act, MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.*

Reversed.

1. WATERS AND WATERCOURSES — INLAND LAKE LEVEL ACT — ACTIONS — STANDING — "INTERESTED PERSONS."

A person must have a legally protected interest that is in jeopardy of being adversely affected before that person can have standing to bring an action under the Inland Lake Level Act; such an "interested person" under the act must allege a sufficient personal stake in the outcome of the controversy to ensure that the dispute sought to be adjudicated will be presented in an adversarial context that is capable of judicial resolution (MCL 281.62[f]; MSA 11.300[2][f]).

2. WATERS AND WATERCOURSES — INLAND LAKE LEVEL ACT — PURPOSE OF ACT.

The purpose of the Inland Lake Level Act is to provide for the control and maintenance of inland lake levels for the public welfare and benefit; the act does not create or protect individual rights regarding inland lake levels or create a civil cause of action for the benefit of individuals who are not satisfied with the county's exercise of authority under the act (MCL 281.61 *et seq.*; MSA 11.300[1] *et seq.*).

3. WATERS AND WATERCOURSES — INLAND LAKE LEVEL ACT — SEASONAL LAKE LEVELS.

The Inland Lake Level Act allows a circuit court to establish seasonal lake levels for any given inland lake (MCL 281.62[i], 281.70[5]; MSA 11.300[2][i], 11.300[10][5]).

4. NOTICE — DUE PROCESS.

The due process requirement of notice is satisfied when interested parties are given notice through a method that is reasonably

calculated under the circumstances to apprise them of proceedings that may directly and adversely affect their legally protected interests and afford them an opportunity to respond; notice by publication is sufficient when, under the circumstances, it is not reasonably possible or practicable to provide more adequate notice.

5. ENVIRONMENT — ENVIRONMENTAL PROTECTION ACT — ACTIONS — PRIMA FACIE CLAIM — ADMINISTRATIVE ACTION.

  A plaintiff seeking to bring a claim under the Michigan Environmental Protection Act must make a prima facie showing that the conduct of the defendant has polluted, impaired, or destroyed the air, water, or other natural resources or the public trust therein or is likely to do so; the court, to determine whether a prima facie claim has been established, must determine whether the challenged action by the defendant rises to the level of an impairment or destruction of a natural resource so as to constitute an environmental risk and justify judicial intervention; administrative action may be sufficient to invoke the act where the administrative action is the last hurdle in moving from the paperwork aspect of the controversy to the actual action that allegedly will cause the harm sought to be prevented (MCL 691.1201 *et seq.*; MSA 14.528[201] *et seq.*).

*Olson & Noonan, P.C.* (by *John D. Noonan*), for the plaintiffs.

*Cummings, McClorey, Davis, Acho & Tremp, P.C.* (by *Dennis P. Mikko*), for the defendants.

Before: HOOD, P.J., and MACKENZIE and T. R. THOMAS,* JJ.

PER CURIAM. Defendants appeal by leave granted the trial court's denial of their motion for summary disposition. We reverse.

This action implicates the Inland Lake Level Act (ILLA), 1961 PA 146, MCL 281.61 *et seq.*; MSA 11.300(1) *et seq.*, and involves the maintenance of two seasonal lake levels of Crystal Lake in Benzie County pursuant to the ILLA. Under the 1909

---

* Circuit judge, sitting on the Court of Appeals by assignment.

version of the ILLA, which allowed lake levels to be established by county ordinance, the Benzie County Board of Supervisors established the level for Crystal Lake at 600.48 feet above sea level. In 1979, the board of supervisors passed a resolution pursuant to 1961 PA 146, MCL 281.63; MSA 11.300(3) instructing the Benzie County Supervisor to institute a proceeding to establish legal summer and winter levels for Crystal Lake. As a result, on December 1, 1980, the Benzie Circuit Court entered an order establishing a summer lake level, for the period May 1 to October 31, of 600.25 feet above sea level and a winter level, from November 1 to April 30, of 599.75 feet above sea level.

The lake level is controlled by a dam with removable boards. The boards are put into place to maintain the summer season lake level and removed to maintain the winter level. The December 1980 order gave the Benzie County Road Commission the responsibility of controlling the lake level by directing it to remove and replace the boards on the dam.

Plaintiffs hold title to real property that abuts the outlet stream from Crystal Lake, which is a tributary to the Betsie River. Water flows from Crystal Lake into Lake Michigan via the outlet stream and the Betsie River. Plaintiffs are affected by the changing levels of Crystal Lake. When the boards are placed on the dam to maintain the summer level of the lake, the outlet stream flow is substantially diminished or eliminated, resulting in fish kills and damage to fish habitat. In winter, when the boards are removed, water surges into the stream and causes substantial flooding and erosion of plaintiffs' property.

Plaintiffs brought this action in 1990, alleging that defendants' actions in altering the lake levels caused damage to their property through erosion

and flooding. Plaintiffs also alleged that the diminished flow of water through the stream killed fish and created a foul stench, which deprived them of their use and enjoyment of their riparian rights and property. Plaintiffs alleged that (1) the establishment of two lake levels was contrary to the ILLA; (2) defendants' actions violated their common-law riparian rights; (3) defendants' actions violated the Michigan Environmental Protection Act (MEPA), MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.*; (4) defendants' actions constituted a nuisance; (5) plaintiffs' due process rights were denied because they did not receive notice of the proceedings that resulted in the order establishing the lake levels; and (6) defendants' actions resulted in an unconstitutional taking.

Defendants removed the action to federal court on the basis of the federal constitutional claims and those claims were dismissed. The state claims were remanded. Defendants moved for summary disposition on the basis of MCR 2.116(C)(5), (7), and (8). Plaintiffs' claims against the road commission and its manager were dismissed on the grounds that they were obligated to follow the December 1980 order and were not proper parties. The trial court denied the motion to dismiss with regard to the remaining defendants. Defendants' motion for reconsideration was also denied.

We review the trial court's ruling with regard to a motion for summary disposition de novo to determine whether the pleadings showed that a party was entitled to judgment as a matter of law or whether affidavits and other documentary evidence showed that no genuine issue of material fact existed. MCR 2.116(I)(1); *Asher v Exxon Co, USA,* 200 Mich App 635, 638; 504 NW2d 728 (1993). The existence of either circumstance merits a grant of summary disposition. *Id.*

We will first address whether plaintiffs' claims are precluded by the ILLA. Although defendants argue this issue in the context of standing, the crux of the matter is whether the ILLA provides a basis for plaintiffs' claims. We find that plaintiffs have standing, but that the ILLA does not permit plaintiffs' claims.

Defendants moved for summary disposition on the basis of, among other subrules, MCR 2.116(C)(5), that plaintiffs lacked the capacity to sue. When reviewing a ruling on a motion under MCR 2.116(C)(5), we must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties. MCR 2.116(G)(5). We review the trial court's denial of summary disposition on this basis de novo and examine the entire record to determine whether the defendant is entitled to judgment as a matter of law. *Dep't of Social Services v Baayoun,* 204 Mich App 170, 173; 514 NW2d 522 (1994).

With regard to defendants' motion for reconsideration, the trial court found that plaintiffs were interested parties; defendants claim this is error. Defendants assert that plaintiffs have no standing to bring an action against defendants under the ILLA because the ILLA does not provide for a private cause of action. Defendants also argue that the proper party against whom plaintiffs should seek relief is the circuit court because it, not defendants, is the entity that sets the lake levels. Moreover, according to defendants, they are exempt from liability because they were merely carrying out a court order.

The ILLA, at the time of this action, specifically defined an "interested person" as

any person who has a record interest in the title to, right of ingress to or reversionary right to a

piece or parcel of land which would be affected by a permanent change in the natural or normal mean level of a natural or artificial public or private inland lake. [1961 PA 146, MCL 281.62(f); MSA 11.300(2)(f).]

It is clear that plaintiffs are interested persons under the ILLA. However, in order to having standing, there must be a showing that plaintiffs have a legally protected interest that is in jeopardy of being adversely affected. *Trout Unlimited, Muskegon-White River Chapter v White Cloud,* 195 Mich App 343, 348; 489 NW2d 188 (1992). Plaintiffs must have alleged a sufficient personal stake in the outcome of the controversy to ensure that the dispute sought to be adjudicated will be presented in an adversarial context that is capable of judicial resolution. *Id.; Karrip v Cannon Twp,* 115 Mich App 726, 733; 321 NW2d 690 (1982). Typically, by demonstrating an injury, a plaintiff can show that it has a personal stake in the matter. *Trout Unlimited, supra; Kaminskas v Detroit,* 68 Mich App 499, 503; 243 NW2d 25 (1976).

We find that plaintiffs have alleged a sufficient personal stake in this controversy and have demonstrated an injury to their enjoyment of the stream. However, although plaintiffs have standing, the ILLA does not provide them with a basis for recovery. In *In re Van Ettan Lake,* 149 Mich App 517, 525-526; 386 NW2d 572 (1986), this Court found that the purpose of the ILLA is to provide for the control and maintenance of inland lake levels for the public welfare and benefit. We noted that the ILLA does not create or protect individual rights regarding inland lake levels or create a civil cause of action for the benefit of individuals who are not satisfied with the county's exercise of authority. *Id.* at 526. Thus, we agree with defen-

dants that plaintiffs have no cause of action under the ILLA.

We also agree with defendants that under the ILLA, because the court has continuing jurisdiction over matters under the ILLA and it "may provide for departure from the normal level as may be necessary to accomplish the purposes of this act," plaintiffs' proper remedy would be to petition the circuit court for reconsideration of the lake levels. 1961 PA 146, MCL 281.70; MSA 11.300(10), as originally enacted. Whether plaintiffs chose or choose to take this route does not affect their ability to sue the county because the county passed a resolution to petition the court to set the lake levels as authorized by statute.

Defendants challenge the trial court's denial of summary disposition regarding their argument that the ILLA does not contemplate merely one lake level, but allows for the establishment of seasonal lake levels. A fundamental rule of statutory construction is that we must ascertain and give effect to the Legislature's intent. *Erb Lumber Co v Homeowner Construction Lien Recovery Fund,* 206 Mich App 716, 719; 522 NW2d 917 (1994). The first consideration in determining intent is the specific language of the statute. *Id.; House Speaker v State Administrative Bd,* 441 Mich 547, 567; 495 NW2d 539 (1993). While we presume the Legislature intended the meaning plainly expressed in a statute, judicial construction is permitted if the language is unclear and susceptible to more than one interpretation. *Cowen v Dep't of Treasury,* 204 Mich App 428, 431; 516 NW2d 511 (1994). If the statutory language is ambiguous or reasonable minds may differ in its interpretation, a reasonable construction must be given in light of the purpose of the statute. *With-*

*erspoon v Guilford,* 203 Mich App 240, 247; 511 NW2d 720 (1994).

Relying on a 1946 attorney general opinion, the trial court concluded that the act contemplates only one lake level. OAG 1947-1948, No 4946, p 36 (August 13, 1946). The earlier versions of the ILLA consistently referred to "normal water level" and "normal height and level" of the inland lakes. "Normal water level" was defined as

> such a level as, considering the height above sea level, established by government surveys; the high water line as disclosed by old surveys; testimony of old inhabitants; the extent to which drainage and other artificial causes have decreased the natural ground water table of the areas; the extent to which natural causes have either decreased or increased the natural ground water table; and all other pertinent surrounding facts and circumstances, will provide the most benefit to the public and best protect the public health, welfare and safety and which will best preserve the natural resources of the state, and preserve and protect the values of properties developed around said lake as a result of the creation of the normal level. [1961 PA 146, MCL 281.62(a); MSA 11.300(2)(a), as originally enacted.]

On this basis, the attorney general concluded that the establishment of only one level was contemplated by the Legislature and courts were without authority to establish two or more levels.

The ILLA currently defines "normal level" as

> the level or levels of the water of an inland lake that provide the most benefit to the public; that best protect the public health, safety, and welfare; that best preserve the natural resources of the state; and that best preserve and protect the value of property around the lake. [MCL 281.62(i); MSA 11.300(2)(i).]

Moreover, the act now provides that "[t]he court may determine that the normal level shall vary seasonally." MCL 281.70(5); MSA 11.300(10)(5). While a change in statutory language is presumed to reflect a change in meaning, *Wright v Vos Steel Co,* 205 Mich App 679, 684; 517 NW2d 880 (1994), we find that this amendment clarified the intent of the Legislature with regard to the number of lake levels that may be set. See *Morgan v Taylor School Dist,* 187 Mich App 5, 12; 466 NW2d 322 (1991). We conclude that the Benzie Circuit Court order establishing two seasonal lake levels did not violate the ILLA. Thus, defendants' motion for summary disposition regarding this claim should have been granted pursuant to MCR 2.116(C)(8) for failure to state an actionable claim.

Next, defendants argue that the trial court erred in denying their motion for summary disposition under MCR 2.116(C)(8), failure to state a claim, regarding plaintiffs' due process claim. According to defendants, plaintiffs were not entitled under the ILLA to receive notice of the petition to the circuit court for the establishment of levels for Crystal Lake. We agree.

A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim to determine whether the opposing party's pleadings allege a prima facie case. *Stehlik v Johnson (On Rehearing),* 206 Mich App 83, 85; 520 NW2d 633 (1994). The trial court must consider all well-pleaded facts in favor of the nonmoving party and should grant the motion only if the allegations fail to state a legal claim. *Id.; Radtke v Everett,* 442 Mich 368, 373-374; 501 NW2d 155 (1993).

Plaintiffs argued below that their due process rights were violated because they did not receive actual notice as "interested persons" under the ILLA and because notice by publication was insuffi-

cient to protect their downstream riparian rights. While the trial court did not specifically address these arguments, it concluded that the question could not be resolved by summary disposition. We disagree.

Due process is satisfied when interested parties are given notice through a method that is reasonably calculated under the circumstances to apprise them of proceedings that may directly and adversely affect their legally protected interests and afford them an opportunity to respond. *Int'l Salt Co v Wayne Co Drain Comm'r,* 367 Mich 160, 167-169; 116 NW2d 328 (1962), citing *Mullane v Central Hanover Bank & Trust Co,* 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950), and *Walker v City of Hutchinson,* 352 US 112; 77 S Ct 200; 1 L Ed 2d 178 (1956). Notice by publication is sufficient to satisfy the due process requirement of notice when, under the circumstances, it is not reasonably possible or practicable to provide more adequate notice. *Harter v Swartz Creek (On Rehearing),* 68 Mich App 403, 406; 242 NW2d 792 (1976), citing *Mullane, supra.*

The ILLA provides for methods of notice of the hearing regarding the establishment of lake levels. 1961 PA 146, MCL 281.70; MSA 11.300(10). Persons within the special assessment district must receive actual notice through certified mail and notice must be published in at least one newspaper of general circulation in the county or counties in which the waters of the inland lake are situated. A special assessment district includes "all parcels of land . . . which are benefited by the establishment of a lake level." 1961 PA 146, MCL 281.69; MSA 11.300(9), as originally enacted. Here, the special assessment district is composed of only those properties that abut Crystal Lake. Because

plaintiffs are not included in the special assessment district, they were not sent notice.

We find that there has been no violation of the ILLA as a result of the failure to give plaintiffs actual notice of the hearing. Furthermore, we conclude that the notice by publication to all persons other than those within the special assessment district satisfied due process because it is a method reasonably calculated under the circumstances to apprise those persons of the proceedings. To require notice to be sent to all property owners along the outlet stream would be overly burdensome and unpracticable. Moreover, we note that the Legislature gave the court, not defendants, the responsibility of notifying persons of the hearing. 1961 PA 146, MCL 281.70; MSA 11.300(10). Plaintiffs' claims that they did not receive proper notice under the ILLA and that notice by publication did not adequately protect their due process rights should have been disposed of through defendants' motion for summary disposition.[1]

Defendants' final argument is that the trial court erred in failing to grant them summary disposition pursuant to MCR 2.116(C)(8) with regard to plaintiffs' MEPA claim. Defendants argue that plaintiffs failed to plead a prima facie case demonstrating that defendants engaged in any conduct that caused pollution, impairment, or destruction of the natural resources.

The MEPA, at the time relevant to this action, provided the state, any political subdivision, or any person with a cause of action against the state, any political subdivision, or any other person "for

---

[1] The trial court did not decide the question whether plaintiffs were riparian owners, and the record contains insufficient facts for us to decide that question. However, assuming arguendo that plaintiffs did have riparian interests, notice by publication was sufficient to protect their interests.

the protection of the air, water and other natural resources and the public trust therein from pollution, impairment or destruction." MCL 691.1202(1); MSA 14.528(202)(1). A plaintiff must make "a prima facie showing that the conduct of the defendant has, or is likely to pollute, impair or destroy the air, water or other natural resources or the public trust therein." MCL 691.1203(1); MSA 14.528(203)(1).

To determine whether the plaintiff has established a prima facie claim under the MEPA, the court must determine whether the challenged action by the defendant rises to the level of an impairment or destruction of a natural resource so as to constitute an environmental risk and justify judicial intervention. *Attorney General ex rel Natural Resources Comm v Balkema,* 191 Mich App 201, 206; 477 NW2d 100 (1991); *West Michigan Environmental Action Council v Natural Resources Comm,* 405 Mich 741, 760; 275 NW2d 538 (1979). Administrative action, such as the issuance of permits to drill wells, is a sufficient basis on which to invoke the MEPA. *Id.* In *Committee for Sensible Land Use v Garfield Twp,* 124 Mich App 559; 335 NW2d 216 (1983), this Court concluded that the defendant's act of rezoning did not itself destroy or impair natural resources. *Id.* at 564-565. Because the environment and natural resources could be adequately protected at a stage after rezoning, an action under the MEPA was determined to be premature. *Id.* at 565.

Against this background, the question becomes whether defendants' conduct in passing a resolution to establish two lake levels was the type of actionable conduct that was likely to lead to the pollution, impairment, or destruction of natural resources. We conclude that it was not. As in *Garfield Twp,* later proceedings were necessary in

this case before anything else that conceivably could harm the natural resources could take place. Defendants' conduct in passing a resolution was merely the initial step necessary pursuant to the ILLA to have the lake level determined. After that action, the ILLA required that the circuit court conduct hearings, notify residents and the Department of Natural Resources of the hearings, and hear proofs and allegations of all parties interested. MCL 281.70; MSA 11.300(10), as amended by 1992 PA 52, effective May 20, 1992. The requirements that the circuit court must have hearings before setting the lake level and that the Department of Natural Resources have notice and an opportunity to participate are safeguards against any unintentional and unforeseen environmental harms that might arise as a result of setting the lake level. This additional step provides the point at which the MEPA could be invoked.

By comparison, the facts of *West Michigan Environmental Action Council, supra,* demonstrate when an administrative action is sufficient to invoke the MEPA. In that case, there was no subsequent step after issuance of permits before the actual drilling could start. Thus, the issuance of permits itself constituted actionable conduct sufficient to invoke the MEPA. It is apparent that although administrative conduct is sufficient to invoke the MEPA, the determinative point is whether that administrative action is the last hurdle in moving from the paperwork to the outdoors. In the case at bar, additional steps were mandated *and followed* before the lake level was, in fact, determined, and to invoke the MEPA at the earliest step—defendants' passage of a resolution— would be premature. *Garfield Twp, supra.* Therefore, defendants' conduct was not sufficient to invoke the MEPA. Defendants' motion for summary

disposition regarding count III, the MEPA count, should have been granted and count III of plaintiffs' complaint should have been dismissed.

In view of our resolution of these issues justifying summary disposition for defendants, we need not address defendants' arguments regarding governmental immunity, some of which were not raised until after we granted leave to appeal.

Reversed.