*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHANNEL VIEW EAST CONDOMINIUM
ASSOCIATION, INC.,

UNPUBLISHED
July 2, 2019

Plaintiff-Appellant,

v

No. 344149
Chippewa Circuit Court
LC No. 16-014487-CK

GREGORY V. FERGUSON,

Defendant-Appellee.

Before: TUKEL, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

At issue in this case is whether plaintiff's board of directors had the power to carry on the business of plaintiff when it initiated the instant lawsuit against defendant in October 2016. Plaintiff appeals by right the trial court's order that granted defendant's motion for summary disposition under MCR 2.116(C)(5) (lack of capacity to sue). Because plaintiff's failure to hold annual meetings to elect its board of directors did not divest the then-existing directors of their authority, we reverse.

## I. BASIC FACTS

Plaintiff's articles of incorporation, which were executed in January 2001, provided that its purpose was to provide for plaintiff's operation in accordance with "rules and regulations of the Association and the laws of the State of Michigan." Pursuant to the articles of incorporation, the first board of directors was elected on April 9, 2001, consisting of Donald A. Nicewander, Larry D. Harmon, and Steven R. Schroff. The articles of incorporation did not provide for a duration or term for this first board of directors, but it stated that "[a]fter the first board is elected, directors will be elected pursuant to the Corporation's Bylaws."

The bylaws, in turn, provide a schedule for when non-developer co-owners can elect directors to the board of directors.

> Within one hundred twenty (120) days after the conveyance of legal or
> equitable title to non-developer co-owners of 25% of the Condominium units that

-1-

may be created, at least 1 director and not less than 25% of the board of directors of the association of co-owners shall be elected by non-developer co-owners. Not later than 120 days after conveyance of legal or equitable title to non-developer co-owners of 50% of the units that may be created, not less than 33 1/3% of the board of directors shall be elected by non-developer co-owners. Not later than 120 days after conveyance of legal or equitable title to non-developer co-owners of 75% of the units that may be created, and before conveyance of 90% of such units, the non-developer co-owners shall elect all directors on the board, except that the developer shall have the right to designate at least 1 director as long as the developer owns and offers for sale at least 10% of the units in the project or as long as 10% of the units remain that may be created.

The bylaws state that the electing of the board of directors is to take place during member/co-owner[1] meetings. However, although the first meeting of members was to take place no later than 120 days after legal and equitable title to 75% of the condominium units have been conveyed to non-developer co-owners, which would have been around mid-July 2003, no such meeting was ever called or took place.[2]

Construction of a house on defendant's lot started no later than 2003. In September 2005, plaintiff informed defendant that he was in violation of the condominium bylaws by not completing construction on his house within the 12 months required by the bylaws.[3] Plaintiff thereafter scheduled a hearing at which defendant could attend to defend against the alleged violations. However, defendant did not appear at the October 31, 2005 hearing. As such, plaintiff found that defendant was in violation of the bylaws and started imposing monthly fines on defendant until the violation was remedied, which as of 2016 still had not occurred.

Plaintiff initiated this lawsuit on October 24, 2016, seeking foreclosure and sale of defendant's property. In its first amended complaint, plaintiff asserted, in part, that defendant had violated its bylaws by failing to complete construction of the house within 12 months. The property had been assessed $137,800 in fines and interest as of August 24, 2017. Plaintiff sought to have the property foreclosed to satisfy the debt, or in the alternative, plaintiff requested to be given the right to collect the debt by other means, such as through garnishment.

---

[1] Being a co-owner and being a member is synonymous, as Article II, § 1 of the bylaws states that "[e]ach co-owner of a Condominium unit . . . shall be a member of the Association."

[2] The record shows that as of March 21, 2003, 77% of the units had been sold. Thus, a member meeting should have taken place sometime on or before July 18, 2003, to elect the entirety of plaintiff's board of directors. And following this first meeting of members, annual meetings were to take place. But, again, no member meetings ever took place.

[3] Article VII, § 6 of the bylaws provides that "[w]hen the construction of any building is once begun, work thereon must be diligently continued and must be completed within a reasonable time. In any event, all construction must be completed within twelve (12) months from the start thereof . . . ."

On March 5, 2018, plaintiff moved for summary disposition under MCR 2.116(C)(10). In response, defendant argued the suit should be dismissed pursuant to MCR 2.116(C)(5) because plaintiff lacked the legal capacity to sue, as it had never held any membership meetings to elect a valid board of directors. According to defendant, the board should have been elected within 120 days of March 21, 2003, which was before plaintiff sought to fine defendant and before plaintiff filed the instant suit. Thus, defendant asserted that without an annually elected board of directors, plaintiff could not take valid actions. The trial court agreed with defendant and dismissed plaintiff's claims.

## II. ANALYSIS

Plaintiff argues that the trial court erred when it dismissed its claims and granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(5).[4] We agree.

### A. STANDARD OF REVIEW

"This Court reviews de novo a trial court's determination on a motion for summary disposition as well as the legal question of whether a party has standing to sue." *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 493; 815 NW2d 132 (2012) (citations omitted). Under MCR 2.116(C)(5), summary disposition is proper if "[t]he party asserting the claim lacks the legal capacity to sue." In reviewing a motion under this subrule, courts are to "consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties," *UAW*, 295 Mich App at 493 (quotation marks and citation omitted), "to determine whether the defendant is entitled to judgment as a matter of law," *Wortelboer v Benzie Co*, 212 Mich App 208, 213; 537 NW2d 603 (1995). This Court also reviews issues of statutory interpretation de novo. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009).

### B. DISCUSSION

A litigant has standing to sue when a party has a substantial interest to litigate a claim in court. *Tennine Corp v Boardwalk Commercial, LLC*, 315 Mich App 1, 7; 888 NW2d 267 (2016). "Standing is not contingent on the merits of the case." *Id*. A corporation generally has the power to sue and be sued. MCL 450.2261(1)(b). At issue here is whether the failure to hold the required member meetings, in which plaintiff's board of directors were to have been elected after the initial election by the incorporator, divests the board of its power or authority to act on behalf of the plaintiff corporation. For reasons more fully described below, we hold that such failure does not divest the board of its power or authority.

Plaintiff is organized under Michigan's Nonprofit Corporation Act, MCL 450.2101 *et seq*. A nonprofit corporation comes into existence when its articles of incorporation are filed. MCL 450.2221. In this case, plaintiff's articles of incorporation were filed in January 2001. In

---

[4] The court necessarily relied on MCR 2.116(I)(2) as well because it granted summary disposition in favor of the non-moving party.

April 2001, the initial board of directors was elected. As an initial matter, plaintiff had the power to sue or be sued. Article IV, § 2 of the bylaws provides that

> [t]he Board of Directors shall have all powers and duties necessary for the administration of the affairs of the Condominium and may do all things which are not prohibited by law or the Condominium Documents or required thereby to be done by the members. The powers and duties to be exercised by the Board shall include, but shall not be limited to, the power and duty:
>
> * * *
>
> (b) To levy and collect assessments against and from the members of the Association and to use the proceeds therefrom for the purposes of the Association, and to enforce assessments through liens and foreclosure proceedings where appropriate;
>
> * * *
>
> (k) to enforce the provisions of the Master Deed and Bylaws of the Condominium and of the Articles of Incorporation and such Bylaws, rules and regulations of this Association as may hereafter be adopted, and to sue on behalf of the Condominium or the members, and to assert, defend or settle claims on behalf of the members with respect to the Condominium[.]

Importantly, nothing in plaintiff's bylaws requires a vote of its members before plaintiff could initiate a lawsuit; that power is given solely to the board of directors.

The essential question in this case is whether plaintiff had a board of directors at the time it filed suit in 2016—if plaintiff had no viable board of directors at that time, there would be no one empowered to act on plaintiff's behalf, including authorizing and filing the instant suit against defendant.

The first annual meeting of the members to elect plaintiff's board of directors should have been held by July 18, 2003. The trial court ruled that the terms of the then-existing board of directors expired at this July deadline. Defendant and the trial court relied on Article IV, § 1 of the bylaws, which states, in pertinent part:

> The business, property and affairs of the Association shall be managed by a Board of Directors consisting of not less than three, and not more than five, directors. A director's term of office will be three years; and the terms will be staggered so that the terms of one-third of the directors will expire each year. A director may serve consecutive terms without limit.
>
> * * *
>
> Once the co-owners have acquired the right hereunder to elect a majority of the Board of Directors, annual meetings of co-owners shall be held to elect

-4-

Directors and conduct other business held in accordance with the provisions of these Bylaws.

A Board of Directors elected pursuant to these provisions, shall serve until the earlier of the next annual meeting of the Association or such time as it has been replaced in accordance with the provisions of these Condominium Bylaws and the Association Bylaws.

However, contrary to the trial court's ruling, nothing in the condominium documents, including the bylaws, states that the board's powers would be divested in the event the first meeting did not occur. First, the provision stating that the board of directors "shall serve until the earlier of the next annual meeting of the Association or such time as it has been replaced," does not actually apply to the situation here. This provision is for a board of directors that was "elected pursuant to these provisions," i.e., the bylaws. However, the board of directors here was not elected pursuant to the *bylaws*—it was elected pursuant to the *articles of incorporation*. Thus, technically, it appears that this provision does not apply. Second, assuming this provision does apply, it clearly states that the board is to serve until the earlier of (1) "the next annual meeting of the Association" or (2) "such time as it has been replaced." It is not disputed that there never has been a "next annual meeting" because no annual meeting has ever taken place. It also is not disputed that there never has been "such [a] time" that the board was replaced by other means. Therefore, because the board was to serve until either of those conditions came to pass, and because neither of those conditions has taken place, the board continued to "serve" in its existing state.

The trial court also ignored in that same Article IV of the bylaws § 5, which describes "actions prior to first meeting":

Subject to the provisions of Section 3 of this Article, all of the actions . . . of the Board of Directors of the Association named in its Articles of Incorporation, or their appointed successors, before the first meeting of members, shall be binding upon the Association in the same manner as though such actions had been authorized by a Board of Directors duly elected by the Association members at the first or any subsequent meeting of members so long as such actions are within the scope of the powers and duties which any Board of Directors may exercise, as provided in the Condominium Documents.

Again, because no member meeting ever took place, the board of directors at issue was the one elected "before the first meeting of members"; hence, its actions are binding upon the Association as if the board had been elected by its members.

In further support of our conclusion, although the Nonprofit Corporation Act did not exist at the time, our Supreme Court long ago recognized that a corporation's directors will continue to hold over as long as they continue to conduct the business of the corporation and in the absence of a demand for elections. In *Kent Co Agricultural Society v Houseman*, 81 Mich 609, 611; 46 NW 15 (1890), the Court considered whether a corporation's officers were permitted to sell land in 1890. The last election of the corporation's directors had been in 1878. *Id*. at 612. The defendant argued in part that the corporation had ceased to exist and its directors could not

hold over. *Id*. at 613. The Michigan Supreme Court rejected the defendant's argument that the corporation's directors could not hold over in absence of elections. *Id*. The Court stated, "The organization has been kept up, the directors and officers have continued to perform their duties, and no direct proceeding has been instituted on behalf of the state to question the validity of the corporation." *Id*. Likewise, in the instant case, plaintiff has been "kept up" through the filing of the annual reports with the state, coupled with the paying of the annual fees to the state; and no proceeding had been initiated to question the validity of plaintiff as a corporation.

Moreover, the rule from *Agricultural Society*, allowing directors of a board to carry over their terms in the absence of an annual meeting, was implicitly adopted in the Nonprofit Corporation Act. MCL 450.2402 states the following:

> A corporation shall hold an annual meeting of its shareholders or members, to elect directors and conduct any other business that may come before the meeting, on a date designated in the bylaws, unless the shareholders or members act by written consent under section 407 or by ballot under section 408 or 409. A failure to hold the annual meeting at the designated time, or to elect a sufficient number of directors at the meeting or any adjournment of the meeting, does not affect otherwise valid corporate acts or work a forfeiture or give cause for dissolution of the corporation, except as provided in section 823. If the annual meeting is not held on the date designated for the meeting, the board shall cause the meeting to be held as soon after that date as is convenient. If the annual meeting is not held for 90 days after the date designated for the meeting, or if no date is designated for 15 months after formation of the corporation or after its last annual meeting, the circuit court for the county in which the principal place of business or registered office of the corporation is located, on application of a shareholder or member, may summarily order that the corporation hold the meeting or the election, or both, and that it is held at the time and place, after the notice, and for the transaction of the business that is designated in the order. At any meeting ordered by the court under this section, the shareholders or members that are present in person or by proxy and that have voting powers constitute a quorum for transaction of the business designated in the order.

Notably, under the statute, the "failure to hold the annual meeting at the designated time," i.e., "on a date designated in the bylaws," "does not affect otherwise valid corporation acts." And, perhaps more importantly, the law implicitly permits a board of directors to carry over their terms when an annual meeting does not take place. This is evidenced by the fact that the statute allows the board to continue to act after the time at which an annual meeting should have been held but was not. See MCL 450.2402 ("If the annual meeting is not held on the date designated for the meeting, the board shall cause the meeting to be held as soon after that date as is convenient."). Also, the statute does not describe a board's powers during this time period (i.e., after an annual meeting should have been held but was not) as being solely limited to setting a future meeting date.

In *McMaster v Mich Nat'l Corp*, 459 Mich 989 (1999), the defendant corporation failed to hold its 1995 annual meeting, which according to defendant's bylaws, was to have occurred in April. *McMaster v Mich Nat'l Corp*, unpublished per curiam opinion of the Court of Appeals,

issued April 24, 1998 (Docket No. 193107), p 1, rev'd 459 Mich 989 (1999). The board of directors in July 2015 set the 1995 annual meeting date for November 30, 1995. *Id*. at 2. The Supreme Court held that the board's July actions, which took place after the board failed to call for and hold the April meeting, were valid under the statute.[5] *McMaster*, 459 Mich at 989. Thus, the board's failure to hold the annual meeting in April, when it was supposed to have occurred, *did not divest the board of its powers*. Likewise, in the present case, plaintiff's failure to hold annual meetings did not automatically divest its board of directors of power.

We caution that our ruling should not be read as somehow giving corporations carte blanche to ignore their bylaws. We note that at any time more than 15 months after formation of the corporation, defendant or another co-owner could have initiated a proceeding to require plaintiff to comply with the bylaws, MCL 559.207, or to compel elections, MCL 450.2402, with the association potentially being liable for the initiator's attorney fees. But no one ever did. Accordingly, regardless of the appropriateness of plaintiff's failing to call for and hold any member/co-owner meetings, as demonstrated by plaintiff's bylaws, the Nonprofit Act, and caselaw, plaintiff's directors continued to hold over in the absence of any elections.

Because the trial court only addressed defendant's counter-arguments to plaintiff's motion for summary disposition, we decline to address any other aspects of this case, such as whether plaintiff was entitled to summary disposition under MCR 2.116(C)(10).

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michael J. Riordan

---

[5] The Court relied on MCL 450.1402 from the Business Corporation Act, but that provision is substantially similar to MCL 450.2402 of the Nonprofit Act.