WEAVER, J.
(dissenting). I dissent from the majority’s reversal of the Court of Appeals holding that plaintiffs have standing to bring a claim under the Michigan environmental protection act (MEPA)[1] with respect to the Osprey Lake impoundment and wetlands 112, 115, and 301. I would hold that plaintiffs have standing under MCL 324.1701(1)[2] to bring an action to enjoin water pumping and bottling production activities that plaintiffs allege will irreparably harm natural resources. I would therefore affirm the Court of Appeals *311 decision holding that plaintiffs have standing with respect to all the affected properties at issue.
The majority’s holding in this case marks the culmination of a line of cases in which the same majority of four (Chief Justice TAYLOR and Justices CORRIGAN, YOUNG, and MARKMAN) has eroded Michigan’s traditional rules of standing.
Beginning with Lee v Macomb Co Bd of Comm’rs,[3] the majority overruled Michigan precedent establishing prudential standing as the traditional doctrine of legal standing in Michigan. In place of Michigan’s doctrine of prudential standing, the majority erroneously adopted a constitutional doctrine of standing based on the federal courts’ doctrine of standing, as stated in Lujan v Defenders of Wildlife.[4]
In Nat’l Wildlife Federation v Cleveland Cliffs Iron Co,[5] the majority of four, through lengthy dicta, attacked the statute at issue in this case, MEPA, while stating that the majority was declining to address whether MEPA represented an increase in the power of this Court, because the plaintiffs in that case met the federal constitutional standing doctrine adopted by the majority in Lee.
In my Nat’l Wildlife concurrence, I wrote: “The majority can wait for a future case that has not drawn public attention to openly and directly declare the MEPA citizen-suit standing provision unconstitutional.”[6] Although this case has been highly publicized, *312 the majority held in a less-publicized case, Rohde v Ann Arbor Pub Schools,[7] that a statute in which the Legislature purports to grant standing to a citizen beyond that recognized in Lee is unconstitutional.
Now, the majority of four has taken this case as the opportunity to finish what it started in Nat’l Wildlife', to deprive the people of Michigan of the ability to protect the natural resources of this state. I dissent because the Michigan Constitution does not restrict the ability of the Legislature to grant standing to the citizens of this state. Further, the Michigan Constitution places a broad duty on the Legislature to protect the environment, and the Legislature has properly fulfilled its constitutional mandate through its enactment of MEPA.
I. THE MAJORITY OF FOUR’S ASSAULT ON STANDING IN MICHIGAN
Before Lee, no Michigan case had held that the issue of standing posed a constitutional issue.[8] Nor did any case hold that Michigan’s judicial branch was subject to the same case-or-controversy limitation imposed on the federal judicial branch under article III of the United States Constitution.[9] In fact, article III standing derived *313 from Lujan was not even an issue raised or briefed by the parties in Lee. On its own initiative, the majority of four raised Lujan’s standing test and erroneously transformed standing in Michigan into a constitutional question.
In Lee, a case involving MCL 35.21, the majority adopted the three-part test set out in Lujan. The majority, quoting Lujan, stated:
“First, the plaintiff must have suffered an ‘injury in fact’ — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) ‘actual or imminent, not “conjectural” or “hypothetical.”’ Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be ‘fairly... trace[able] to the challenged action of the defendant, and not... th[e] result [of] the independent action of some third party not before the court.’ Third, it must be ‘likely,’ as opposed to merely ‘speculative,’ that the injury will be ‘redressed by a favorable decision.’ ” [Lee, supra at 739, quoting Lujan, supra at 560-561.]
The majority erroneously adopted the Lujan test as a constitutionally based test for standing, under a theory that Const 1963, art 6, § 1, which vests the state courts with “judicial power,”[10] granted the Michigan judicial *314 branch only the same limited judicial power bestowed on the federal courts under article III of the United States Constitution. Obscuring the fact that the Michigan Constitution contains no corollary to US Const, art III, § 2, the Lee majority suggested that Michigan’s standing doctrine developed on a parallel track by way of “an additional constitutional underpinning.”[11] The additional underpinning referred to by the majority is Const 1963, art 3, § 2, which provides that “[t]he powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.”[12]
After overruling Michigan’s traditional prudential doctrine of standing in Lee by adopting the Lujan test, the majority next questioned the Legislature’s ability to confer standing on citizens through the use of statutes *315 granting standing when a citizen alleges a specific wrong. In Nat’l Wildlife, the majority of four attacked MEPA by stating at length, all in dicta, that the Legislature cannot grant citizens standing. The majority based this argument on the premise that the Legislature would be taking away the power to enforce laws, an essential component of the “executive power,” and giving that power to the judicial branch. The majority proudly proclaimed that it was “resisting an expansion of power —not an everyday occurrence in the annals of modem government.”[13] Unfortunately, that statement was not accurate, because the majority showed its lack of judicial restraint by compromising the Legislature’s constitutional duty to enact laws for the protection of the environment and enlarging the Court’s capacity to overrule statutes under the guise of the majority’s self-initiated, erroneous “constitutional” doctrine of standing.[14]
Further, as the majority mistakenly believed, MEPA does not purport to give the judiciary the power of the executive branch to enforce the laws, because that power is given to the people of Michigan.[15] A court’s role in these cases differs in no way from its role in any other controversy that comes before it: the court hears the case, interprets the applicable law, and renders a decision.
*316 By holding that plaintiffs in this case cannot bring suit with respect to the Osprey Lake impoundment and wetlands 112, 115, and 301 pursuant to the standing granted by MEPA, the majority takes away the people’s power to ensure protection of Michigan’s natural resources. Through MEPA, the Legislature has given “the private citizen a sizable share of the initiative for environmental law enforcement.”[16] The majority has taken away that initiative. By basing the decision on faux and inapplicable constitutional principles, short of a constitutional amendment even more explicit than Const 1963, art 4, § 52, the majority has taken away the Legislature’s ability to ever give that initiative back to the people.
II. ART 4, § 52 OF THE MICHIGAN CONSTITUTION
Const 1963, art 4, § 52 creates a duty in the Legislature to ensure that Michigan’s natural resources are protected.[17] As I stated in Nat’l Wildlife, the majority completely brushes off and ignores the will of the people to force the Legislature to ensure that the natural resources of this state are protected. I wrote:
Among the reasons why Lee’s article Ill-based standing test or any judge-created standing test should not be applied to MEPA plaintiffs, the most important is that to do so defeats the clear, unambiguous, and readily understand *317 able purpose of art 4, § 52 of the Michigan Constitution.[18] Through art 4, § 52, the people of Michigan directed the Legislature “to provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction.” Art 4, § 52 provides that this mandate serves the people’s express “paramount concern in the interest of the health, safety and general welfare of the people” specifically with respect to the “conservation and development of the natural resources of the state.” Employing the precise words of art 4, § 52, the Legislature enacted MEPA in fulfillment of art 4, § 52’s mandate. [Nat’l Wildlife, supra at 665.]
Before Nat’l Wildlife, this Court had noted that the Legislature conferred standing under MEPA to any person who alleges that a defendant’s conduct has or is likely to pollute, impair, or destroy the air, water, or other natural resources or the public trust therein.[19]
Inexplicably, the majority of four has decided that the very specific mandate of art 4, § 52 requiring the Legislature to protect the natural resources does not allow the Legislature to grant standing to citizens of the state and, instead, has usurped that mandate in place of the federal case-or-controversy limitation specifically placed by the United States Constitution on the federal courts’ judicial power. I strongly dis *318 agree with the majority because the majority has, mistakenly or intentionally, replaced a clear mandate of the will of the people of Michigan with irrelevant, misinterpreted, and nonbinding federal law. It is a tragic day for Michigan.
III. APPLICATION
Plaintiff Michigan Citizens for Water Conservation (MCWC) is a nonprofit corporation formed to protect and conserve water resources in Michigan. It consists of approximately 1,300 members; 265 of those members are riparian owners in the Tri-Lakes area of Mecosta County. Among the members are plaintiffs R.J. and Barbara Doyle, who own land on the Dead Stream, and plaintiffs Jeffrey and Shelly Sapp, who own land on Thompson Lake.
In 2002, after receiving the required permits from the Michigan Department of Environmental Quality (DEQ), defendant Nestlé Waters North America Inc. began pumping and bottling water on a 139-acre area on the northern shore of the Osprey Lake impoundment.[20] The permits allowed defendant to operate the four wells at a combined maximum pumping rate of 400 gallons a minute.
Plaintiffs brought suit under MCL 324.1701(1), alleging that defendant’s water pumping and bottling would cause damage to various interconnected streams, lakes, and wetlands north of the Tri-Lakes region. Specifically, plaintiffs alleged damage to the Osprey Lake impoundment, Thompson Lake, the Dead Stream, and wetlands 112, 115, and 301. Plaintiffs sought temporary and permanent injunctive relief in the form of preventing defen *319 dant from pumping and bottling water in the Tri-Lakes area. The trial court granted plaintiffs injunctive relief.
On appeal, the Court of Appeals affirmed in part, reversed in part, and remanded to the trial court.[21] On the issue of standing, a majority consisting of Judges White and Murphy held that plaintiffs had standing to bring claims with respect to all of the natural resources at issue. The separate opinion written by Judge Murphy, held that
plaintiffs have standing because of the complex, reciprocal nature of the ecosystem that encompasses the pertinent natural resources noted above and because of the hydro-logic interaction, connection, or interrelationship between these natural resources, the springs, the aquifer, and defendant Nestlé’s pumping activities, whereby impact on one particular resource caused by Nestlé’s pumping necessarily affects other resources in the surrounding area. Therefore although there was no evidence that plaintiffs actually used or physically participated in activities on the Osprey Lake impoundment and wetlands 112, 115, and 301, environmental injuries to those natural resources play a role in any harm caused to the Dead Stream, the Dead Stream’s wetlands, and Thompson Lake, which are used by and adjacent to property owned by plaintiffs and not the subject of a standing challenge. [.Michigan Citizens, supra at 113.]
The majority now erroneously reverses the Court of Appeals decision on plaintiffs’ standing with respect to the Osprey Lake impoundment, and wetlands 112, 115, and 301, holding that “[p]laintiffs failed to establish that they have a substantial interest in these areas, detrimentally affected by Nestlé’s conduct, that is distinct from the interest of the general public.” Ante at 297.
*320 For the reasons stated, I believe that plaintiffs satisfied Michigan’s standing doctrine because they complied with MCL 324.1701(1). MCL 324.1701(1) gives standing to any citizen to protect the natural resources of Michigan, pursuant to the constitutional mandate requiring the Legislature to protect natural resources. I would affirm the Court of Appeals decision.
Furthermore, plaintiffs argue that even if MEPA does riot grant standing to any citizen to challenge any environmental harm, plaintiffs have met the majority’s constitutional standing requirements with regard to the Dead Stream and Thompson Lake and that the United States Supreme Court has in the past stated that “[ojnce this standing is established, the party may assert the interests of the general public in support of his claims for equitable relief.”[22] While I find that federal standing law is irrelevant to Michigan law and not binding on this Court, I do believe that plaintiffs raise a valid argument. Plaintiffs point to Warth v Seldin, 422 US 490; 95 S Ct 2197; 45 L Ed 2d 343 (1975), in which the United States Supreme Court seemed to contemplate federal standing in a situation similar to that of plaintiffs. The Court noted:
In some circumstances, countervailing considerations may outweigh the concerns underlying the usual reluctance to exert judicial power when the plaintiffs claim to relief rests on the legal rights of third parties. See United States v. Raines, 362 U.S. [17, 22-23; 80 S Ct 519; 4 L Ed 2d 524 (1960)]. In such instances, the Court has found, in effect, that the constitutional or statutory provision in question implies a right of action in the plaintiff. See Pierce v. Society of Sisters, 268 U.S. 510 [45 S Ct 571; 69 L Ed 1070] (1925); Sullivan v. Little Hungtin Park, Inc., 396 U.S. 229, 237 [90 S Ct 400; 24 L Ed 2d 386] (1969). See generally *321 Part IV, infra. Moreover, Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules. Of course, Art. Ill’s requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants. E.g., United States v. SCRAP, 412 U.S. 669 [93 S Ct 2405; 37 L Ed 2d 254] (1973). But so long as this requirement is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of their claim. E.g., Sierra Club v. Morton, supra at 737; FCC v. Sanders Radio Station, 309 U.S. 470, 477 [60 St Ct 693; 84 L Ed 869 (1940). [Id. at 500-501.]
Whether dealing with federal constitutional standing or standing granted by statute, I find the rationale in Warth to be persuasive when the plaintiffs have established standing for their own claims.
IV CONCLUSION
By holding that MEPA does not grant standing to plaintiffs to protect all the resources at issue,
[t]he majority disregards the intent of the Legislature, erodes the people’s constitutional mandate, and overrules 30 years of Michigan case law that held that the Legislature meant what it said when it allowed “any person” to bring an action in circuit court to protect natural resources from actual or likely harm.[23]
The majority of four has now completed what it started in Lee and Nat’l Wildlife-, it has taken the power to protect the state’s natural resources away from the *322 people of Michigan, despite the people’s stated belief that the natural resources of this state are of paramount concern.
I would affirm the Court of Appeals holding that plaintiffs have standing to bring suit under MEPA, because plaintiffs allege that the defendant’s water pumping and bottling activities will irreparably harm Michigan’s natural resources.
Cavanagh, J., concurred with Weaver, J.

 MCL 324.1701 et seq.

 MCL 324.1701(1) states:
The attorney general or any person may maintain an action in the circuit court having jurisdiction where the alleged violation occurred or is likely to occur for declaratory and equitable relief against any person for the protection of the air, water, and other natural resources and the public trust in these resources from pollution, impairment, or destruction.

 Lee v Macomb Co Bd of Comm’rs, 464 Mich 726; 629 NW2d 900 (2001).

 Lujan v Defenders of Wildlife, 504 US 555; 112 S Ct 2130; 119 L Ed 2d 351 (1992).

 Nat’l Wildlife Federation v Cleveland Cliffs Iron Co, 471 Mich 608; 684 NW2d 800 (2004).

 Id. at 653-654 (Weaver, J., concurring in the result only).

 Rohde v Ann Arbor Pub Schools, 479 Mich 336; 737 NW2d 158 (2007).

 Before Lee, the Michigan standing requirements were based on prudential, rather than constitutional, concerns. See, generally, House Speaker v State Administrative Bd, 441 Mich 547, 559 n 20; 495 NW2d 539 (1993), and Justice Riley’s concurrence in Detroit Fire Fighters Ass’n v Detroit, 449 Mich 629, 643; 537 NW2d 436 (1995).

 As I wrote in my concurrence in Lee:
In House Speaker we stated that “this Court is not bound to follow federal cases regarding standing,” pointing out that “[o]ne notable distinction between federal and state standing analysis is the power of this Court to issue advisory opinions. Const 1963, art 3, § 8. Under Article III of the federal constitution, federal courts *313 may issue opinions only where there is an actual case or controversy.” [House Speaker, supra at] 559, including n 20. Justice Kennedy, writing for the Court in ASARCO Inc v Radish, 490 US 605, 617; 109 S Ct 2037; 104 L Ed 2d 696 (1989), acknowledged:
“We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not hound by the limitations of a case or controversy or other federal rules of justiciability ....” [Lee, supra at 743 n 2.]

 The Michigan Constitution does not define the judicial power. In the majority’s attempt to delineate the similarities between the judicial power in Michigan and the federal courts, it quotes Michigan Chiropractic Council v Comm’r of the Office of Financial & Ins Services, 475 Mich 363, 369; 716 NW2d 561 (2006), in which the same majority stated: “Our *314 tripartite system of government is constitutionally established in both our state and federal constitutions. US Const, art III, § 1 confers upon the courts only judicial power’; US Const, art III, § 2 limits the judicial power to ‘cases’ and ‘controversies.’ ” The problem with the majority’s comparison between Michigan’s Constitution and the federal constitution is that only US Const, art III, § 2 sets out a case-or-controversy limitation. Similar to that contained in the Michigan Constitution, the general idea of judicial power contained in US Const, art III, § 1 is very broad. It is then specifically limited by US Const, art III, § 2. The Michigan Constitution contains no such limitation. Thus, the majority misinterprets what the general federal judicial power entails, and instead defines the power by its own limitations set out in a subsequent section of the federal constitution. To make matters worse, the majority then defines Michigan’s judicial power by the federal limitations, even though the Michigan Constitution lacks a similar limitation.

 Lee, supra at 737 (emphasis added).

 The legislative branch has the authority to enact laws. Nowhere in the Michigan Constitution does it establish that the Legislature cannot enact laws granting standing. Nor does the Michigan Constitution establish that the judicial branch is the sole authority in determining who may have standing.

 Nat’l Wildlife, supra at 639 (emphasis in original).

 “[F]aux judicial restraint is judicial obfuscation.” Federal Election Comm v Wisconsin Right to Life, Inc,_US_,_; 127 S Ct 2652, 2684; 168 L Ed 2d 329, 365 (2007) (Scalia, J., concurring in part and concurring in the judgment).

 It can even be argued that the Legislature did not give any power to the people, because a reading of Const 1963, art 1, § 1 suggests that the people have retained the power, given that the provision states that “[a]ll political power is inherent in the people.”

 Eyde v Michigan, 393 Mich 453, 454; 225 NW2d 1 (1975).

 Const 1963, art 4, § 52 provides:
The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water and other natural resources of the state from pollution, impairment and destruction.

 See, e.g., Michigan Farm Bureau v Secretary of State, 379 Mich 387, 393; 151 NW2d 797 (1967) (addressing principles of constitutional construction).

 See Ray v Mason Co Drain Comm’r, 393 Mich 294, 305; 224 NW2d 883 (1975). That MEPA grants standing to “any person” has been unquestioned for more than 30 years. See, also, Eyde, supra at 454; West Michigan Environmental Action Council v Natural Resources Comm, 405 Mich 741; 275 NW2d 538 (1979); Kimberly Hills Neighborhood Ass’n v Dion, 114 Mich App 495; 320 NW2d 668 (1982); Trout Unlimited, Muskegon-White River Chapter v White Cloud, 195 Mich App 343; 489 NW2d 188 (1992); Nemeth v Abonmarche Dev, Inc, 457 Mich 16; 576 NW2d 641 (1998).

 The Osprey Lake impoundment and several of the wetlands at issue in this case are contained within a parcel of land owned by defendants Donald and Nancy Bollman.

 Michigan Citizens for Water Conservation v Nestlé Waters North America Inc, 269 Mich App 25; 709 NW2d 174 (2005).

 Sierra Club v Morton, 405 US 727, 740 n 15; 92 S Ct 1361; 31 L Ed 2d 636 (1972).

 Nat’l Wildlife, supra at 652 (Weaver, J., concurring in the result only).